## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOHAMMAD SOHAIL SALEEM, | : | Civil No. 3:17-cv-1122 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| MARK GARMAN, et al., | : | |
| Respondents | : | |

### MEMORANDUM

Petitioner Mohammad Sohail Saleem ("Saleem") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a conviction and sentence imposed in the Court of Common Pleas of Lebanon County, Pennsylvania. (Doc. 1). Saleem subsequently filed an amendment to the petition. (Doc. 17). For the reasons discussed below, the Court will deny the petition.

### I. Factual and Procedural Background

In 2014, Saleem was charged with various sexually-related offenses in the Court of Common Pleas of Lebanon County. See Commonwealth v. Saleem, CP-38-CR-0001112-2014, CP-38-CR-0000565-2014 (Lebanon County Ct. Com. Pl.). On April 21, 2015, Saleem pled guilty to indecent assault and harassment involving two victims who were employees of a small business he owned. See Commonwealth v. Saleem, 2017 WL 1223851, *1 (Pa. Super. 2017). Saleem was subsequently found to be a sexually

violent predator pursuant to 42 PA. C.S.A. § 9792. *Id.* On June 3, 2015, a sentencing hearing was held. *Id.* At sentencing, following a discussion regarding possible deportation proceedings, the trial court sentenced Saleem to an aggregate prison term of twenty-one (21) months to ten (10) years. *Id.* Saleem thereafter filed two post-sentence motions claiming ineffective assistance of counsel, which the trial court denied without prejudice to Saleem seeking relief under the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. *Id.*

On September 1, 2015, Saleem filed a counseled PCRA petition regarding the voluntariness of his plea. (Doc. 13-18). Saleem argued that his plea was predicated upon a promise that he would be deported to Pakistan. (*Id.* at pp. 5-8). When Saleem was not deported, he argued that he was deprived of the benefit of his plea bargain. *Id.* Saleem further argued that his guilty plea counsel was ineffective for leading him to believe that deportation would occur. *Id.* The PCRA court held a hearing and ultimately denied the PCRA petition, finding that immediate deportation was not a part of the plea agreement. (Doc. 13-19; Doc. 13-23). Rather, as part of the plea agreement, the District Attorney's office agreed that it would have no objection to deportation and would not take any action to prevent deportation. (Doc. 13-19, p. 42; Doc. 13-23, p. 10). The PCRA court further noted that Saleem's attorney communicated to him that there was no guarantee that he would be deported. (Doc. 13-19, pp. 42-43; Doc. 13-23, pp. 10-11). Specifically, Saleem's attorney

2

wrote a letter to him explaining that, "There is no way to determine how much of your sentence you will have to serve before you are deported. It is possible that you would have to serve your entire sentence, possibly 50 years or more, before, you are deported." (Doc. 13-19, p. 42; Doc. 13-23, p. 10).

Saleem filed an appeal to the Pennsylvania Superior Court. *Commonwealth v. Saleem*, 2017 WL 1223851. On March 28, 2017, the Pennsylvania Superior Court affirmed the PCRA court's denial of the petition. *Id.* Saleem did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On April 6, 2017, Saleem filed a second PCRA petition. (Doc. 13-28). He filed an amended petition on May 18, 2017. (Doc. 13-29). On June 16, 2017, the PCRA court denied the petition as untimely. (Doc. 13-32). Saleem filed a notice of appeal. On May 1, 2018, the Superior Court found that Saleem did not meet his burden of proving that his untimely PCRA petition fit within any of the three exceptions to the PCRA's time-bar, and affirmed the order of the PCRA court dismissing the petition as untimely. *Commonwealth v. Saleem*, 2018 WL 2016409 (Pa. Super. 2018).

On May 10, 2018, Saleem filed a petition for writ of habeas corpus challenging his status as a sexually violent predator. *See Commonwealth v. Saleem*, 2019 WL 1754670, at *1 (Pa. Super. 2019). On September 4, 2018, the PCRA court treated his petition for habeas corpus as a PCRA petition, and dismissed it as untimely. *See id.* Saleem filed a

3

notice of appeal. *See id.* On April 17, 2019, the Pennsylvania Superior Court found that the PCRA court correctly treated Saleem's habeas corpus petition as a PCRA petition, and correctly dismissed it as untimely. *Id.*

On June 26, 2017, Saleem filed the instant federal habeas petition. (Doc. 1). He filed an amendment to the petition on November 9, 2017. (Doc. 17).

## II.   Standards of Review

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

### A.   Exhaustion

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or

4

circumstances exist that render such process ineffective to protect the rights of the applicant. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).[1] Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). To "fairly present" a claim, a petitioner must present its "factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999); *see also Nara v. Frank*, 488 F.3d 187, 197-98 (3d Cir. 2007) (recognizing that a claim is fairly presented when a petitioner presents the same factual and legal basis for the claim to the state courts). While the

---

[1] In Pennsylvania, pursuant to Order 218 of the Pennsylvania Supreme Court, review of criminal convictions and post-conviction relief matters from the Pennsylvania Supreme Court is discretionary and "unavailable" for purposes of exhausting state court remedies under § 2254. *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004). Thus, to exhaust state remedies, a Pennsylvania prisoner need appeal only to the Pennsylvania Superior Court.

petitioner need not cite "book and verse" of the federal Constitution, *Picard v. Connor*, 404 U.S. 270, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971), he must "give the State 'the opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" before presenting those claims here, *Duncan v. Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (quoting *Picard*, 404 U.S. at 275, 92 S.Ct. 509).

## B.    Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court

6

decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an

appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[2]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

## III. Discussion

In the instant petition, Saleem sets forth the following grounds for relief: (1) trial counsel was ineffective for advising Saleem to enter a guilty plea; (2) trial counsel was ineffective for unlawfully inducing Saleem to enter a guilty plea; (3) trial counsel was ineffective for failing to ensure that the factual basis of the plea was presented; (4) the trial judge was biased; and, (5) the Commonwealth committed a *Brady*[3] violation. (Doc. 1, pp. 5-

---

[2]    "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

[3]    *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

10; Doc. 17).

### A. Ineffective Assistance of Counsel Claims

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). This right to effective assistance of counsel also extends to the first appeal. *Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). In *Strickland*, the Supreme Court articulated a two-prong test in assessing whether a petitioner has been denied the effective assistance of counsel. *Strickland*, 466 U.S. at 687-88. A petitioner must demonstrate: (1) that his counsel's representation "fell below an objective standard of reasonableness" and (2) that such defective performance caused the petitioner prejudice. *See id.*

In evaluating the first prong of the *Strickland* test, the court must be "highly deferential" toward counsel's conduct. *Id.* at 689. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). "*Strickland* and its progeny make clear that counsel's strategic choices will not be second-guessed by post-hoc determinations that a different trial strategy would have fared better." *Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006) (citing *Strickland*, 446

9

U.S. at 689). Notably, courts will not deem counsel ineffective for failing to raise a meritless argument. *Strickland*, 466 U.S. at 691; *United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999).

To satisfy the prejudice prong, the petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Moreover, the petitioner must show that he or she had a reasonable likelihood of prevailing on the motion at issue, and having prevailed on the motion, it was also reasonably likely that the result of the trial would have been different. *See Thomas v. Varner*, 428 F.3d 491, 502 (3d Cir. 2005).

To prevail on a claim for ineffective assistance of counsel, a petitioner must satisfy both prongs of the *Strickland* test. *Carpenter v. Vaughn*, 296 F.3d 138, 149 (3d Cir. 2002). The inquiry may begin with either the deficient performance or prejudice prong, and the court is not required to consider the second prong of the test if the petitioner is unable to satisfy the first one. *Strickland*, 466 U.S. at 697.

### 1. *Purported Coerced and Unlawfully Induced Guilty Plea*

In his first two grounds for relief, Saleem alleges that trial counsel was ineffective for advising him to enter a guilty plea, and for unlawfully inducing him to enter a guilty plea. (Doc. 1, pp. 5, 7). The Court has thoroughly reviewed the trial record and state court

10

decisions with respect to these claims. Saleem's statements during the April 21, 2015 plea hearing clearly illustrate that he knowingly and voluntarily entered into the plea agreement and specifically accepted the terms of the agreement. At the plea hearing, the following exchange took place between the trial court and Saleem:

Q. [The Court] [I]n your case on Action Number 2014-565 Counts One, Two, Five, and Six will be dismissed. You're pleading guilty, therefore, to Counts Three and Four which are the two Counts of indecent assault. That's an open plea so you can receive any sentence up to the maximum sentence which the law permits. The Commonwealth has no objection to immediate deportation in your particular circumstance?

A. [Saleem] Yes.

Q. On Action Number 2014-1112 you're entering an open plea to the single charge set forth on that information. Do you understand that plea agreement?

A. Yes.

Q. Is that your agreement?

A. Yes.

Q. Okay. You understand the consequences of potential deportation?

A. Yes.

Q. Now, ladies and gentlemen, I have some questions I'd like to ask all of you. Do all of you folks read, write, and understand the English language? Mr. Saleem?

A. Yes.

Q.   The charges against all of you folks are set forth in the informations that were filed in your case, a copy has been provided to you. Did you review that information and do you understand the charges against you? Mr. Saleem?

A.   Yes.

Q.   Are you pleading guilty here today because you did the things as we have discussed them?

A.   Yes.

Q.   Now, I'd like to ask you all some questions about the written statement that you authored to the Court. I'm talking about the six page document with all the questions on it. Did you have enough time to review that statement with your attorney? Mr. Saleem?

A.   Yes.

Q.   Did you understand all the questions on that statement? Mr. Saleem?

A.   Yes.

Q.   Are those your initials at the bottom of each page and your signature which appear at the end of your statement? Mr. Saleem?

A.   Yes.

Q.   At this time do you have any questions you want to ask of your attorney, or the district attorney, or the Court? Do you have any questions? Mr. Saleem?

A.   No.

Q.   Are you satisfied with your attorney and the way that you have been represented? Mr. Saleem?

A.    Yes.

Q.    Knowing all the things that we have discussed, do you still wish to enter a plea of guilty to the charges as they have been presented and as we discussed it?  Mr. Saleem?

A.    Yes.

(Doc. 13-10, pp. 2-4, N.T. Guilty Plea, 2:18-4-23).

In addressing these ineffective assistance of trial counsel claims, the Pennsylvania

Superior Court affirmed the PCRA court's denial of the claims.  The PCRA court's findings

concerning these issues, as adopted by the Superior Court, are as follows:

> On the issue raised by [Saleem], we heard testimony from three witnesses, including [Saleem] himself.  Among the evidence that we heard was the following:
>
> > • The written guilty plea colloquy set forth [in] [Saleem]'s plea agreement.  That plea agreement was: "Commonwealth to not pros [sic] Counts 1, 2, 5, 6 at sentencing.  Defendant to plead open.  Commonwealth has no objection to immediate deportation."  (Exh. 2 and 3; PCRA N.T. 11).
> >
> > • During [Saleem]'s guilty plea, he was verbally advised by former President Judge Robert J. Eby that his plea agreement called for him to enter an open plea "so that you can receive any sentence up to the maximum sentence which the law permits."  (Plea N.T. 2).  Judge Eby also articulated that the Commonwealth would have no objection to immediate deportation: (Plea N.T. 2).  However, there was no promise that [Saleem] would be immediately deported.
> >
> > • Megan Ryland-Tanner was the prosecutor assigned to [Saleem]'s case.  She negotiated the possibility of a plea on behalf of the Commonwealth.  (PCRA N.T. 16).  Although Ms.

Tanner believed that [Saleem] would be deported shortly after sentencing (PCRA N.T. 18), she was very clear that the plea agreement did not require deportation. (PCRA N.T. 19-20). Attorney Tanner was asked a direct question from the Court:

> The Court: Was immediate deportation a part of the plea agreement that you entered into?
>
> Ms. Tanner: It was not from my perspective because, again, I don't have control over what the feds do. So I wasn't going to be the one to say this can't happen, but at the same time I don't have control over what they choose to do.
> . . .
>
> The Court: But I guess what I am asking, so I am very clear here, was there ever a plea agreement that you made with Attorney Warner that said, a condition of this plea of guilty is that the Defendant will be deported?
>
> The Witness: No.

(PCRA N.T. 22).

• David Warner, Esquire was [Saleem]'s counsel when he decided to plead guilty. Attorney Warner testified that he requested that Attorney Tanner agree to immediate deportation. However, Attorney Warner emphasized: "And from that first conversation, she [Attorney Tanner] indicated to me, I don't have the ability to control that, I can't really help or obstruct that in any way, that's in control of the federal government. And that was her position throughout," (PCRA N.T. 26).

• Attorney Warner recommended that [Saleem] hire an immigration attorney at Attorney Warner's request. Before entering a plea of guilty, [Saleem] met with and received advice

from an immigration attorney regarding his immigration issues.
(PCRA N.T. 9-10).

• Attorney Warner acknowledged that [Saleem]'s "number one
goal" was to be deported. However, Attorney Warner testified[:]

> I continued to assure him throughout the process
> that I couldn't control that. He asked me
> numerous times, get me deported, do whatever
> you can, talk to someone, call someone. And I
> continued to tell him, I can't do anything, there's
> nothing I can do to expedite that process to make
> that happen more quickly. It's completely outside
> my control.

(PCRA N.T. 28-29).

• Attorney Warner wrote a letter to [Saleem] that was admitted
at the PCRA hearing as Exhibit No, 1. This letter
comprehensively outlined all of Mr. Saleem's options for him.
Attorney Warner described the sentencing ranges applicable to
[Saleem]'s charges and told [Saleem]: "I cannot tell you what
your exact sentence will be, but I would expect there to be
some period of incarceration due to your prior record," (Exh. 1;
PCRA N.T. 33).

• Attorney Warner never advised [Saleem] that He would be
immediately deported as a result of his guilty plea. (PCRA N.T.
34).

In rendering our decision regarding [Saleem]'s PCRA claim, we placed weight
upon the letter written by Attorney Warner that was marked as Exh. 1.
Among other things, the comprehensive letter outlined the plea agreement for
[Saleem]. Attorney Warner wrote:

> If you agree to plead guilty, the District Attorney's Office will
> waive the mandatory minimum and will not seek to enforce it.
> You would plead open to these three total counts with the

Judge to sentence you on those charges. The standard range on the charges would be probation to 9 months in jail and probation to 3 months in jail. The District Attorney's office would also agree to include a provision in the sentencing order that they would have no objection to your immediate deportation. I cannot tell you what your exact sentence would be, but I would expect that there would be some period of incarceration due to your prior record.

(Exh. 1). The letter written by Attorney Warner is completely consistent with his testimony and the testimony of Deputy District Attorney Tanner. Simply stated, the Commonwealth promised not to inject itself into the deportation process, but it never promised that deportation would occur. Attorney Warner truthfully communicated this information to [Saleem], and he chose to enter a plea of guilty knowing all of his options.

We have little doubt that [Saleem] hoped to be deported. We also have little doubt that he was surprised when the victim appeared to complain about the prospect of deportation after only three months of incarceration. He may have even been hoping for a sentence at the bottom of his standard range. Whatever [Saleem] may have hoped does not change the clear reality of what occurred. [Saleem] voluntarily entered an open plea of guilty knowing that he could be sentenced to jail and knowing that deportation was not a certainty. The fact that events did not proceeds [sic] as [Saleem] had hoped or even anticipated does not change the fact that he knew the implications of what he was facing by pleading guilty and nevertheless chose to do so.

The gravamen of [Saleem]'s PCRA is that his guilty plea counsel was ineffective. As we rhetorically asked during the PCRA, "What did Attorney Warner do wrong?" Attorney Warner truthfully described to [Saleem] what the plea agreement was. Attorney Warner truthfully told [Saleem] that the Commonwealth would have no objection to deportation, but he could not promise or guaranty [sic] a prompt deportation. Attorney Warner wrote a letter outlining all of [Saleem]'s options. He even advised [Saleem] that the most likely outcome would be a sentence that called for incarceration. We are hard pressed to discern how Attorney Warner provided ineffective representation. To the contrary, Attorney Warner did everything that could reasonably be expected of counsel representing a defendant in a guilty plea.

*Commonwealth v. Saleem*, 2017 WL 1223851, at *11-13.

In the context of a guilty plea, *Strickland*'s prejudice test requires the petitioner to establish "that there is a reasonable probability that, but for counsel's errors [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Consistent with *Strickland*, Saleem was required to affirmatively demonstrate to the state court that plea counsel coerced and misled him into pleading guilty and that he was unlawfully induced to plead guilty, based upon a representation that he would be immediately deported to Pakistan, and that counsel's performance was therefore deficient. *Strickland*, 466 U.S. at 687-89. The state courts rejected these claims. The state courts determined that Saleem had been fully informed about the terms of his plea, the plea was not unlawfully induced, he understood the nature of the charges, that he could receive the maximum sentence for each charge, and that the Commonwealth had no objection to immediate deportation, but there was never any promise that Saleem would be immediately deported. *See Commonwealth v. Saleem*, 2017 WL 1223851, at *2, 11-13. Additionally, on the written plea agreement, Saleem explicitly indicated that no promises had been made to him to persuade him to enter a guilty plea. (Doc. 13-8, p. 4; Doc. 13-9, p. 4). The state courts thus found that counsel did not render ineffective assistance. Because the state courts found that Saleem failed to make an adequate showing on the performance prong, no analysis of the prejudice prong

17

was required. *See Strickland*, 466 U.S. at 697. It is clear that the state court decisions are not contrary to, nor an unreasonable application of, *Strickland*, and these ineffectiveness claims provide no basis for habeas relief.

## 2. Factual Basis of the Plea Agreement

In his supplement to the habeas petition, Saleem alleges that trial counsel was ineffective for failing to ensure that the factual basis of the plea was presented. (Doc. 17). Saleem acknowledges that this claim was not presented to the state courts. (*Id.*). In an attempt to excuse the procedural default of this claim, Saleem argues that PCRA counsel failed to advance this claim in his PCRA proceedings. (*Id.*). The United States Supreme Court has recognized that, under certain circumstances, the procedural default of an ineffective assistance of trial counsel claim may be excused where the default was caused by ineffective assistance of counsel in post-conviction collateral proceedings. *See Martinez v. Ryan*, 566 U.S. 1, 6-18 (2012). Specifically, the *Martinez* Court held that:

> [A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 17.

The *Martinez* Court limited its holding to cases where "under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding." *Id.* Shortly thereafter, the Supreme Court revisited its *Martinez* holding,

18

extending it to apply not only to cases where state procedural law expressly prohibited ineffective assistance claims on direct appeal, but also where "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013). The Third Circuit has subsequently examined Pennsylvania procedural law and found that *Martinez* applies in Pennsylvania. *Cox v. Horn*, 757 F.3d 113, 124 n.8 (3d Cir. 2014).

Saleem's claim of ineffective assistance of counsel at his collateral proceedings falls within the scope of the *Martinez* rule. Under *Martinez*, the failure of a federal habeas petitioner's counsel to raise a claim in an initial-review collateral proceeding can constitute cause if: (1) PCRA counsel's failure itself constituted ineffective assistance of counsel under *Strickland*, 466 U.S. at 687; and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one." *Martinez*, 566 U.S. at 14. "Under *Strickland*, courts are precluded from finding that counsel was ineffective unless they find both that counsel's performance fell below an objectively unreasonable standard, and that the defendant was prejudiced by that performance." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002). A petitioner must overcome the strong presumption that his trial counsel's conduct fell "within the wide range of reasonable professional assistance" and that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Even if a petitioner demonstrates that his attorney's performance fell below prevailing professional norms, habeas relief will only be available if he further demonstrates that this deficient performance prejudiced his defense. A petitioner must show that there is "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court may deny an ineffective assistance of counsel claim solely upon a petitioner's failure to make a sufficient showing under either prong. *Id.* at 687, 697.

In the instant action, it is undisputed that Saleem never raised the claim regarding the factual basis of his plea in state court. In addressing similar ineffective assistance of PCRA counsel claims, the Superior Court specifically found that Saleem challenged his plea agreement before the PCRA court, and his ineffectiveness claims lacked arguable merit. *Commonwealth v. Saleem*, 2017 WL 1223851, at *3-4 (footnote omitted). During PCRA proceedings, the PCRA court asked counsel, in the presence of Saleem, which issues Saleem sought to raise in the PCRA proceedings. *See id.* Counsel indicated that Saleem sought to challenge only his guilty plea as unknowing and involuntary, based upon Saleem's belief that the agreement provided for immediate deportation. *Id.* Saleem never alleged that the factual basis for the plea was not presented. It is evident that Saleem did in fact challenge his plea agreement in state court, and had the opportunity to raise the present issue in his PCRA petitions. Saleem failed to do so. Nonetheless, upon thorough review of

the written plea agreements and oral plea colloquy, it is clear that Saleem knowingly and voluntarily entered into the plea agreement, and was sufficiently aware of the relevant circumstances. (*See* Docs. 13-7, 13-8, 13-9).

Due process requires that a guilty plea be voluntary, knowing, and intelligent. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). As such, a criminal defendant should not plead to a crime unless, and until, he has had explained to him and understands all of his constitutional rights and protections, including the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury, and the right to confront one's accusers. *Id.* In *Boykin*, the United States Supreme Court emphasized the importance of a judge's duty in ensuring that a criminal defendant have a full understanding of what the plea connotes and its consequences by "canvassing the matter" on the record. *Boykin*, 395 U.S. at 243-44. The failure to specifically articulate these rights, however, is not dispositive if the circumstances otherwise establish that the plea was constitutionally acceptable. *United States v. Stewart*, 977 F.2d 81, 85 (3d Cir.1992), *cert. denied*, 507 U.S. 979, 113 S.Ct. 1433, 122 L.Ed.2d 800 (1993) (finding the plea colloquy adequate despite trial court's failure to enumerate *Boykin* rights given that those rights were reviewed in prior plea colloquy that occurred only six weeks earlier). A plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving. *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S.Ct.

2253, 49 L.Ed.2d 108 (1976).

Here, the criminal informations detailed the charges and crimes against Saleem, and provided critical information and facts about the incidents. (Doc. 13-3; Doc. 13-4). In the written guilty plea colloquies, Saleem specifically indicated that he understood the nature of the charges to which he was pleading guilty, his lawyer explained the elements of the offenses to which he was pleading guilty, he read the criminal informations, he admitted to committing the crimes to which he was charged, and his criminal conduct fit the legal elements of the crimes. (Doc. 13-8, p. 2; Doc. 13-9, p. 2). During the oral plea colloquy, the trial court recited the charges against Saleem, and made every effort to ensure that Saleem understood that he was entering a guilty plea to indecent assault and the summary offense of harassment. (Doc. 13-10). The record reflects that Saleem's plea was entered voluntarily, knowingly, and intelligently, and the factual basis to support the guilty plea was on the record, and therefore there were no additional claims that PCRA counsel should reasonably have raised.

The Court thus finds that Saleem has failed to establish any cause and prejudice to excuse his procedural default of this claim. Nor is there any indication that a failure to review this claim will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Norris v. Brooks*, 794 F.3d 401, 404 (3d Cir. 2015). Consequently, Saleem is precluded from pursuing federal habeas corpus relief with regard

to this issue. Furthermore, any attempt by Saleem to exhaust his state remedies at this

time would be futile because this claim is procedurally defaulted due to waiver of the claim

and expiration of the PCRA statute of limitations. *See* 42 PA. CONS. STAT. § 9544(b) ("For

purposes of this subchapter, an issue is waived if the petitioner could have raised it but

failed to do so before trial, at trial, during unitary review, on appeal or in a prior state

postconviction proceeding"); 42 PA. CONS. STAT. § 9545(b) ("Any petition under this

subchapter, including a second or subsequent petition, shall be filed within one year of the

date the judgment becomes final"). The Court will deny habeas relief on this ground.

### B.    Bias

Saleem next asserts that the sentencing judge was biased against him. (Doc. 1, p.

8). In ruling on the first PCRA petition, the state courts found that this issue was waived:

> Saleem argues that the sentencing judge was biased against him. Brief for
> Appellant at 26. Saleem directs our attention to the following hypothetical,
> stated by the sentencing judge, as an example of how Saleem could be
> permitted back into the United States, even after deportation:
>
> > Let me give a hypothetical. Let's say that [Saleem's] ever in
> > Pakistan. He comes into knowledge about a terrorist. He goes
> > to the United States Consulate and says, I'll give up this
> > terrorist. I'll let you know where he is, I'll let you know where
> > he's staying, but you are going to have to let me come back
> > and live with my family in America. Now, when that
> > happens—if that happens—the federal government is going to
> > say, hum, we can take out a terrorist who's dangerous to
> > thousands of people and may commit horrific acts and all we
> > have to do is let this guy come back and live in America with his
> > wife and children. That's going to be awful tempting.

23

Brief for Appellant at 26 (quoting N.T., 6/3/15, at 11-12). Saleem argues that the judge's comments demonstrate the judge's prejudice against him. *Id.* Saleem also directs our attention to the sentencing judge's explanation regarding the court's concern that Saleem would not be incarcerated in Pakistan:

> [Saleem's] not going to be put in jail in Pakistan. I can't—I'm speculating when I say that he might be viewed as a hero there, but—and that is speculation. But I know that he gets off that plane in Islamabad, the American officials are going to send him out of a gate, take his handcuffs off, and say, bye, bye. And he's free as a bird. In fact, that I know and that's not something I'm comfortable with.

Brief for Appellant at 27 (quoting N.T., 6/3/16, at 16).

Our review of the record discloses that Saleem did not raise this claim in his PCRA Petition or before the PCRA court. Accordingly, it is not preserved for appellate review. *See* PA. R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal).

We further conclude that Saleem's claim of ineffective assistance, based upon PCRA counsel's failure to allege bias by the sentencing judge, is waived, based upon Saleem's failure to raise the issue before the PCRA court. *See* Pa.R.A.P. 302(a) (stating that a claim cannot be raised for the first time on appeal); *see also Commonwealth v. Henkel*, 90 A.3d 16, 29-30 (Pa. Super. 2014) (*en banc*) (finding ineffective assistance of PCRA counsel claims cannot be raised for the first time on appeal). We therefore affirm the Order of the PCRA court.

*Commonwealth v. Saleem*, 2017 WL 1223851, at *3, 4.

It is clear that Saleem has waived this claim under state law and, as a result, has

procedurally defaulted this claim in this forum. *See Coleman*, 501 U.S. at 750; *Sistrunk v.*

*Vaughn*, 96 F.3d 666, 673 (3d Cir. 1996) (concluding, "if the final state court presented with

24

a federal claim refuses to decide its merits based on an established state rule of law independent of the federal claim and adequate to support the refusal, federal habeas review is foreclosed"). Saleem is not entitled to federal habeas review unless he can meet his burden of establishing "cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims would result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Norris*, 794 F.3d at 404.

Saleem acknowledges that this claim was not exhausted in state court. (Doc. 1, p. 12). In an attempt to excuse the procedural default of this claim, Saleem argues that PCRA counsel failed to advance this claim in his PCRA proceedings. (*Id.*). The PCRA court determined that, although Saleem waived his claim regarding the trial judge's alleged bias, the claim nonetheless lacked merit. The PCRA court's findings concerning this issue, as adopted by the Superior Court, are as follows:

> [W]e wish to note that [Saleem's] arguments regarding disqualification of the Judge are predicated upon hyperbole. For example, [Saleem's] Rule 1925 Statements indicate that the Judge called him a "terrorist." This is simply not accurate. In response to a statement proffered by the prosecutor, the Judge provided a hypothetical scenario by which [Saleem] could earn a return to America. The Judge emphasized on numerous occasions that his comments were "hypothetical" and not based upon a belief that [Saleem] was in fact a terrorist. In addition, [Saleem] points to a letter from the mother of an aggrieved litigant that was published in a local paper as proof that the Judge had "numerous complaints" proffered against him. Similarly, [Saleem] has investigated the background of the Judge. Because the Judge's son is a Navy SEAL who works for the Defense Department and because the Judge himself has led church-related mission trips to Ecuador, [Saleem] hypothesizes that the Judge must be prejudiced against Muslims like himself.

Such claims are wildly exaggerated and have no basis in fact.

*Commonwealth v. Saleem*, 2017 WL 1223851, at \*11 n.2.

Because the underlying claim regarding the trial judge's bias was found to be

meritless, PCRA counsel's failure to advance a meritless claim cannot constitute cause to

excuse procedural default. *See Martinez*, 566 U.S. at 14. The Court thus finds that Saleem

has failed to establish any cause and prejudice to excuse his procedural default of this

claim. Nor is there any indication that a failure to review this claim will result in a

fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Norris*, 794 F.3d at 404.

Consequently, Saleem is precluded from pursuing federal habeas corpus relief with regard

to this issue. Furthermore, as stated *supra*, any attempt by Saleem to exhaust his state

remedies at this time would be futile because this claim is procedurally defaulted due to

waiver of the claim and expiration of the PCRA statute of limitations. *See* 42 PA. CONS.

STAT. § 9544(b); 42 PA. CONS. STAT. § 9545(b). As such, Saleem is in procedural default

for failing to comply with the state filing requirements, and this issue need not be considered

here. *See Coleman*, 501 U.S. at 750.

## C. *Brady* Violation

Saleem alleges that the Commonwealth committed a *Brady* violation when it failed to

disclose an alleged exculpatory video. In *Brady*, the United States Supreme Court held that

"suppression by the prosecution of evidence favorable to an accused upon request violates

due process where the evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, a petitioner must demonstrate that: (1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence is favorable to the accused, either because it is exculpatory or impeaching; and (3) that the evidence was material to the outcome of the case. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The materiality standard is satisfied when the evidence places the "whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995). Further, this standard is satisfied "if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would be different." *Strickler*, 527 U.S. at 281-82. In order for evidence to be material, it is not necessary that the evidence establish by a preponderance that disclosure of the evidence would have resulted in an acquittal. *Kyles*, 514 U.S. at 434-35. However, in making a determination of materiality, the assessment of the omitted evidence's impact must take account of the cumulative effect of the suppressed evidence in light of the other evidence, not merely the probative value of the suppressed evidence standing alone. *Id.* at 436-37.

Saleem contends that the Commonwealth possessed an exculpatory video, which it failed to turn over under *Brady*. (Doc. 1, p. 10). In ruling on the first PCRA petition, the state courts found that this issue was waived. *See Commonwealth v. Saleem*, 2017 WL

1223851, at *9-11. The PCRA court's findings concerning this issue were adopted by the

Superior Court, and are as follows:

> In this case,[Saleem] raised one issue in his counseled PCRA Petition. Prior
> to the hearing that was conducted, the Court invited [Saleem] to articulate all
> issues that he intended to pursue. In [Saleem's] presence, counsel noted
> only one issue—the one involving [Saleem's] alleged right to immediate
> deportation. This is the issue that was addressed at length in the March 24,
> 2016 hearing, and it is the only issue that we adjudicated following the
> hearing.
>
> To the extent that [Saleem] now claims to add additional issues, he should be
> precluded from doing so by virtue of the doctrine of waiver. By failing to
> articulate his claims he now wishes to pursue regarding . . . the allegedly
> exculpatory video, [Saleem] waived this issue[]. Accordingly, we will not
> substantively address [it].

Commonwealth v. Saleem, 2017 WL 1223851, at *11 (footnote omitted).

After the state courts denied Saleem's first PCRA petition, he further pursued this

issue in his second PCRA petition. In the second petition, Saleem argued that the PCRA

court erred in denying the first petition because he proved that government interference

prevented him from asserting his innocence due to the Commonwealth's failure to turn over

video evidence. The PCRA court denied the second petition as untimely. On appeal, the

Superior Court affirmed the denial of the petition, and found that Saleem did not establish

that his untimely PCRA petition fit within any of the exceptions to the PCRA's time-bar. The

Superior Court found as follows:

> [Saleem] claims that the governmental interference exception applies. (See
> [Saleem's] Brief, at 8-10). He asserts that the Lebanon City Police

28

Department possessed an exculpatory video, which the Commonwealth was required, under *Brady*, to turn over, but failed to do so. (*See id.*). He argues that his failure to raise the claim previously was the result of the Commonwealth not turning over this video, and therefore the governmental interference exception applies. (*See id.*). We disagree.

"Although a properly plead [sic] *Brady* claim may fall within the governmental interference exception, *Commonwealth v. Beasley*, 559 Pa. 604, 741 A.2d 1258, 1261 (1999), a petition invoking the exception must be filed within [sixty] days of the date the claim could have been filed pursuant to section 9545(b)(2)." *Commonwealth v. Breakiron*, 781 A.2d 94, 98 (Pa. 2001) (one citation omitted). In *Breakiron*, our Supreme Court concluded that where the appellant "fail[ed] to offer a reasonable explanation as to why this information, with the exercise of due diligence, could not have been obtained earlier[,]" he failed to meet the requirements for the exemption to the PCRA time-bar. *Id.* (footnote omitted).

Here, [Saleem] has not attempted to explain why, with the exercise of due diligence, he could not have earlier learned of the Commonwealth's alleged violation of its obligation to disclose the surveillance video. (*See* [Saleem's] Brief, at 8-10). As the PCRA court noted, it appears that [Saleem] has been aware of the existence of the surveillance video since at least September 30, 2016, when he filed his first request for the video. (*See* PCRA Ct. Op., at 5-7). The instant petition, filed on April 6, 2017, was well beyond the sixty-day time period after September 30, 2016, within which [Saleem] must have filed his petition invoking the exception for it to apply. *See* 42 PA. C.S.A. § 9545(b)(2). Thus the exception does not apply and the PCRA court did not have jurisdiction to consider [Saleem's] claim. *See Jackson, supra* at 519.

*Commonwealth v. Saleem*, 2018 WL 2016409, at *3 (footnotes omitted). In further support

of the finding that Saleem was aware of the surveillance system, the state courts noted that,

as the owner of the business where the alleged sexual assaults occurred and where the

surveillance video was recorded, Saleem would have known about the existence of a video

surveillance system well before his trial. *Id.* at *3 n.5 (citing PCRA Court Opinion).

To properly exhaust his state remedies, Saleem was required to fairly present his

*Brady* claim to the state court, either on direct appeal or by collateral review. *See Castille*,

489 U.S. at 349-50; *Blasi v. Attorney General of Pa.*, 30 F. Supp. 2d 481, 487 (M.D. Pa.

1998). The record is clear that Saleem waived this claim under state law. Therefore, the

*Brady* claim is procedurally defaulted and will be addressed only upon a showing of cause

and prejudice or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750;

*Sistrunk*, 96 F.3d at 673.

In an attempt to excuse the procedural default of this claim, Saleem asserts that the

*Brady* claim was never presented to the state courts because the prosecution suppressed

the video evidence. (Doc. 1, p. 10). However, the Third Circuit Court of Appeals has held

that "a general claim that the prosecutor has suppressed exculpatory information cannot

satisfy the exhaustion requirement as to all [] *Brady* claims that a habeas petitioner may

bring." *Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990). The Court concludes that

Saleem has not exhausted the *Brady* claim in his habeas petition, and this argument does

not excuse his procedural default of the claim. *See Landano*, 897 F.2d at 669-70 ("[The

United States Court of Appeals for the Third Circuit] has consistently held that in complying

with the exhaustion requirement a habeas petitioner must not only provide the state courts

with his legal theory as to why his constitutional rights have been violated, but also the

factual predicate on which that legal theory rests. This requirement is especially appropriate

in the context of an alleged *Brady* violation since the materiality of the suppressed information is determined by considering the strength of the state's case as a whole." (citing *United States v. Agurs*, 427 U.S. 97, 112-13 (1976))).

Further, requiring exhaustion of the *Brady* claim, now, would be futile. It is clear that Saleem has no avenue through which to present his *Brady* claim to the state courts because any PCRA petition would be untimely. *See* 42 PA. CONS. STAT. § 9545(b)(1) (explaining that collateral actions must be filed "within one year of the date the judgment becomes final[.]"). Therefore, the Court finds that Saleem has procedurally defaulted this claim.

## IV. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at

least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the disposition of this case debatable. A certificate of appealability will not issue.

## V.  Conclusion

The Court will deny Saleem's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Date:  December ___, 2019