FILED
SCRANTON

JUN -9 2021

PER_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURTS
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MOHAMMAD SOHAIL SALEEM     :    No. 3:17-CV-1122
          Petitioner,     :
          VS.     :
MARK GARMAN SUPERINTENDENT,     :    MOTION 60 (B)
S.C.I., ROCKVIEW, et. al.,     :
          Respondents,     :

INDEPENDENT ACTION UNDER RULE 60 (B)
SEEKING RELIEF FROM A "FINAL JUDGEMENT, ORDER"
PURSUANT TO FED.R.CIV.P. 60 (B) (3)(4)(6)

TO THE HONORABLE JUDGE(S) OF THE ABOVE SAID COURT;

NOW COMES, Mohammad Sohail Saleem, ("Mr. Saleem"), Pro-Se, Petitioner, in the above captioned matter, who files this motion seeking relief from a "final judgement or order" and prays this Honorable District Court to reopen original Habeas Corpus Petition or alter the final judgement of Habeas Corpus Petition, pursuant to Fraud, Misrepresentation, or Misconduct by an Opposing Party, a Void Judgement, Extraordinary Circumstances of Miscarriage of Justice, where without such relief, an extreme and unexpected hardship would occur.

## PARTIES

1.    Petitioner, Mr. Saleem, is a competent individual who is currently incarcerated at the State Correctional Institution at Camp Hill, (S.C.I., Camp Hill), located at 2500 Lisbun Road, Camp Hill, PA 17001.

2.    Respondent, Superintendent Mark Garman, (Mr. Garman), who is employed as Facility Superintendent, at the State Correctional Institution at Rockview, Located at 1 Rockview Place, Bellefonte, PA 16823, a division of the Department of Corrections, (D.O.C.), whose headquarters is located at 1920 Technology Parkway, Mechanicsburg, PA 17050. Mr. Garman presently represented by the District Attorney's Office of the Lebanon County, 400 South Eighth (8th) Street, Lebanon, PA 17042.

## RELEVANT PROCEDURAL POSTURE

3.    On March 21, 2014, Mr. Saleem was charges with various charges, and On April 21, 2015, Mr. Saleem, entered a Negociated Guilty Plea to three counts of indecent assault, a misdemeanor of second degree, with the agreement that **"Commonwealth has no objection to immediate deportation in your particular circumstances"**.

4.    Mr. Saleem was sentenced to a consecutive term of nine (9) months to four (4) years, on two counts, along with three (3) months to two (2) years, creating an aggregate term of twenty one (21) months to ten (10) years.

5.    On September 1, 2015, Mr. Saleem filed a P.C.R.A. Petition with the Lebanon County, Court of Common Pleas. Mr. Saleem's P.C.R.A., was ultimately denied on March 26, 2016. Mr. Saleem filed an appeal to Superior Court of Pennsylvania. The Superior Court affirmed the order of the Lower Court.

6. On April 6, 2017, Mr. Saleem filed a second P.C.R.A. Petition, which was denied on June 16, 2017. Mr. Saleem filed an appeal to the Superior Court of Pennsylvania. On May 1, 2018, the Superior Court of Pennsylvania affirmed the decision.

7. On June 26, 2017, Mr. Saleem filed a Petition for Writ of Habeas Corpus, with the United States District Courts for the Middle District. After review, the Honorable Robert D. Mariani denied, Mr. Saleem's request for Habeas Corpus Relief on December 11, 2019.

8. A timely Notice of Appeal was filed to the the United States Courts of Appeals for the Third Circuit, which was denied on August 20, 2020. A Petition for Rehearing was filed in the matter. The Petition for rehearing was denied on or around December 5, 2020.

9. Multiple post-conviction proceedings were commenced, in addition to P.C.R.A. Petitions.

## STANDARD OF REVIEW

10. A. Rule 60 (b)

"Rule 60(b) allows a party to seek relief from a final judgement, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discover evidence." Gonzalez V. Crosby, 545 U.S. 524, 528, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005). The Rule provides;

Grounds for Relief from a Final Judgement, Order, or Proceeding. On motion and just terms, the court may review a party or its legal representative from a final judgement, order, or proceeding for the following reasons;

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgement is void;

(5) the judgement has been satisfied, released, or discharged; it is based on an earlier judgement that has been reversed or vacated; or applying it projectively in no longer (**2014 U.S. Dist. LEXIS 12**) equitable; or

(6) any other person that justified relief. Fed R. Civ. P. 60(b). "Rule 60(b)(6)... permits reopening when the movant shows 'any... reason justifying relief from the operation of the judgement' other than the more specific circumstances set out in Rule 60(b)(1)-(5)."
A "movant seeking relief under Rule 60(b)(6) [must] show 'extraordinary circumstances' justifying the reopening of a final judgement." <u>Gonzalez</u>, 545 U.S. at 535.
"It is available where the party seeking relief demonstrate that 'extreme' and 'unexpected' hardship will result absent such relief." <u>Jackson v. Danberg</u>, 656 F.3d 157, 165-66 (3rd Cir. 2011)

11. **B. Rule 60 (d)(3)**

In 2005, the Third Circuit Court of Appeals explained the standard to be applied to a motion to set aside judgement pursuant to Rule 60(d)(3) as follows;

Actions for fraud upon the court are so rare that this Court has not previously has the occasion to articulate a legal definition of the concept. The concept of fraud upon the court challanges the very principle upon which our judicial system is based; the finality of a judgement. The presumption against the reopening of a case that has gone through the appellate process all the way to the United States Supreme Court and reached final judgement must be not just a high hurdle to climb but a steep cliff-face (**2014 U.S. Dist. LEXIS 14**) to scale.

12. **C. Successive Habeas Petitions.**

"[A] Rule 60(b) motion that seeks to revisit the federal court's denial on the merits of a claim for relief should be treated as a successive habeas petition. "<u>Gonzalez</u>, 545 U.S. at 534. If a petitioner seeks to relitigate issues previous decided by the district courts on habeas review or to pose new claims that would have been cognizable on federal review, his Rule 60(b) motion will constitute a successive habeas petition. <u>United States v. Medina</u>, 2006 U.S. Dist. LEXIS 87936, *19 (E.D. Pa. 2006)

13. **Rule 60 (B)(3)**
Fraud, Misrepresentation or Misconduct by an Opposing Party

It is contention of Mr. Saleem, that there are evidences of the District Attorney's Office has abuse discretion and intentionally interfere with his immediate deportation. District Attorney's Office commit intentional fraud, misrepresentation or misconduct by filing the Writ of Habeas Corpus Ad Prosequendum ("written request for temporary borrowing"), on June 10, 2015. This Writ was filed knowingly and purposely, in bad faith that there is court appearance scheduled on June 16, 2015. Honorable John C. Tylwalk, sign this faulty Writ, without verifying that if there is any court hearing scheduled for the June 16, 2015?
(See Exhibit "A")

14. Mr. Saleem contends that Commonwealth of Pennsylvania has violate his due process and constitutional rights when Mr. Saleem was borrowed from ICE custody by filing a false document (Writ of Habeas Corpus Ad Prosequendum). Such filing is voidable, whether it was filed by the District Attorney or an agent of Commonwealth. The Writ of Habeas Corpus Ad Prosequendum, was filed, requiring Mr. Saleem to appear for charges which were pending before the Court of Common Pleas of Lebanon County, yet no such charges were pending. Further, no hearing was ever held on June 16, 2015 at 8:30 A.M. or ever held at all. (See Exhibit "A")

15. District Attorney's Office was intellectually dishonest and their acts does not stack-up against the facts and build the wall on sand by providing false information in the Writ of Habeas Corpus Ad Prosequendum. The elements of honesty was replaced with intentional fraud, that there is a "scheduled court appearance". These very actions, prevent Mr. Saleem from his deportation, when Mr. Saleem was not returned to custody of the Federal Government Authorities or Immigration and Customs Enforcement ("ICE"), instead

he was entered in to the custody of the Pennsylvania Department of Corrections, (DOC) on June 25, 2015.

16. It is Mr. Saleem's content that in the instant matter, there are clear and obvious facts of abuse discretion, when Mr. Saleem was prevented by the Lebanon County District Attorney's Office from proceeding to Pakistan, as required by the negotiated plea agreement. Within Notes of Testimony the Honorable Robert J. Eby, Senior Judge, over Mr. Saleem's matter, accepted the Negotiated Plea Agreement that "Commonwealth has no objection to immediate deportation in your particular circumstances."
(N.T. Plea Hearing, April 21, 2015, 2 : 23-25; See Exhibit "B")

## 17. FALSE INFORMATION TO TRIAL ATTORNEY

On June 10, 2015, around same day or time when the faulty Writ of Habeas Corpus Ad Prosequendum, was filed, knowingly and purposely, in a bad faith and with false information was provided under oath. District Attorney's Office did not stop there, and commit another fraud, misrepresentation, or misconduct, and contacted trial attorney, Mr. Warner, to further cover-up the wrong doings. District Attorney's Office lied once again, that somehow a congressman (anonymous) has involved and ICE is reconsidering Mr. Saleem's deportation status. District Attorney's Office was morally dishonest and abuse discretion by proving false information to Mr. Warner. There is no facts or evidence that any congressman has ever involved or ICE ever has delayed the deportation process. On June 10, 2015, (on or about same day), Mr. Warner wrote a letter with the information provided by the District Attorney's Office.
(See Exhibit "C")

18. District Attorney's Office knew better, but didn't do better, when inform Mr. Warner that there is congressman involve or ICE is reconsidering Mr. Saleem's deportation. The absolute evidence shows that District Attorney's Office intentionally involved in the scam and was aware of what wrong doings exactly,

what they were doing. Fact of the matter is that District Attorney's Office did not care for noble duty and did not use the power honestly and justly. It was in knowledge of District Attorney's Office that airline ticket has been purchased and U.S. Marshals has been assigned for the purpose of deportation. Further, Mr. Saleem's passport was turned over to ICE by the Commonwealth. (See Exhibit "D"

19. District Attorney's Office use all the tactics to hide the facts and impose everything illegal by abusing discretion, involve in continue outrage lies, did not stop after one lie. Now question is, if a congressman was involved, why the Writ of Habeas Corpus Ad Prosequendum, was filed with different, yet another false information?

Or why it was not told to Mr. Warner that there is a scheduled court appearance on June 16, 2015? (as was provided in the Writ). District Attorney's Office never explained that what clause of law has give the office authority to provide this false information?

20. <u>FALSE INFORMATION BY THE DISTRICT ATTORNEY'S OFFICE TO MR. SALEEM'S WIFE</u>

District Attorney's Office again, purposely choose to twist and trash rather than, respect the law. After already abusing discretion, committing intentional fraud, this office further involves in another scam, when sometimes after June 10, 2015, Mr. Saleem's wife called District Attorney's Office and inquired that; "Why Mr. Saleem is back in Lebanon County, while he was going to be deported?" Mr. Saleem's wife further told District Attorney's Office that he must have to leave soon since, her mother (Mr. Saleem's mother-in-law), is on death-bed. And her son also have severe autism, and all the family waiting for deportation. District Attorney's Office abuse discretion once more, and prefer to lie over truth, even after Mr. Saleem's wife indicate that there is something wrong, saying that "Mr. Saleem is in Lebanon County to sign some paperwork and needing parole number."

21. <u>MISREPRESENTATION AND MISCONDUCT AT THE PCRA HEARING</u>

On March 26, 2016, on the time of PCRA hearing when Honorable Bradford H. Charles, contribute his opinion;

> COURT: "... and after that the Commonwealth would not affirmatively stand in the way of deportation. There is no evidence in this case that anyone at the District Attorney's Office affirmatively took steps to prevent deportation. As I am sitting here right now I don't know why the federal government choose not to deport him. I don't know, but they did. That is their choice. But there is no evidence that the District Attorney's Office played any role at all in that process. Had the District Attorney's Office stepped forward and affirmatively went to the federal government and said, do not deport him, then that would have been a violation of the plea agreement. There is no evidence that that occurred. There is no evidence that that occurred."

(N.T. PCRA Hearing, March 26, 2016, 39 : 10-25; See Exhibit "E")

22.     The time of PCRA hearing, Jared Hinsey, ADA and Megan Ryland-Tanner ADA were present in the courtroom. Both of the officials were aware of that a Writ of Habeas Corpus Ad Prosequendum has been filed by their Office. Both of the officials under oath has duty to protect and promote the law, but instead they choose to fantasize fraud, misrepresentation and misconduct by hindering the facts about the Writ. None of the officials indicate that who file the Writ? or federal government was not cause for interference in the deportation. The substantial factor and sole cause for interference was their own office.

23.     Mr. Saleem claims that this intentional fraud, misrepresentation and misconduct, continued into the federal habeas proceedings because he had not yet obtained correct answer that why the Writ was filed with false information?; Why false information was given to Mr. Warner; Who actually interfere and stop his deportation? Further, Commonwealth's answers were either deceptive or failed to directly answer Mr. Saleem's allegations in his habeas petition. Mr. Saleem has raised the issued in his habeas petition but respondents has committed fraud on this Honorable Court by concealing the facts in the matter, which were also overlooked by this Honorable Court.

## 24. INTENTIONAL FRAUD, MISREPRESENTATION OR MISCONDUCT AT THE HABEAS RELIEF PROCEDINGS

As avers in the previous paragraphs 13 through 23, and explained therein, the majority of Mr. Saleem's fraud allegations, which he combines with arguments regarding the misrepresentation and misconduct of the opposing party or counsel in this case, relate to frauds perpetrated on this Habeas Court. Such claims did not seek to challenge the underlying criminal proceedings but on this Honorable Court's decision denying federal habeas relief.

In this regard, the motion to reopen, is properly constructed under Rule 60 and not as a second or successive habeas petition. The Rule 60 motion "does challenge the procedure the circumstances surrounding the disposition of Mr. Saleem's original federal habeas petition - and not, challanges the circumstances underlying conviction.

Mr. Saleem presents the following issues, in which intentional fraud, misrepresentation, and misconduct of an opposing party, was committed and then continued to the federal habeas proceedings;

**ISSUE NO. I.** The following issue was raise in the federal habeas petition at page No. 2, pp 2.
"On April 13, 2015, Counsel sent Saleem a letter explaining the terms of a plea deal offered by the District Attorney's Office. In the letter, he stated that "The District Attorney's Office would also agree to include a provision in the sentencing order that they have no objection to your immediate deportation."

**ARGUMENT:-** Commonwealth's has recklessly disregarded to "No objection to immediate deportation". Contrary to the agreement of District Attorney's Office the provision was not included in the sentencing order. Further despite this issue was raised in federal habeas corpus, the Commonwealth was deceptive or failed to directly answer Mr. Saleem allegation. Respondent's Memorandum in Response to Petitioner's Petition For Writ of Habeas Corpus was silent in the matter.

Furthermore, Habeas Court has overlooked that if the provision of "No objection to your (Mr. Saleem's) deportation" was included in the sentencing order or not. This very issue was not addressed in this Court's Memorandum of December 11, 2019.

ISSUE NO. II.   The following issue was raise in the federal habeas petition at page No. 2, pp 3

> Q.   ... in your case on Action Number 2014-565 ... you're pleading guilty, therefore, to Counts Three and Four which are the two counts of indecent assault. That's an open plea so you can receive any sentence up to the maximum sentence which the law permits. **The Commonwealth has no objection to immediate deportation in your particular circumstances?**

ARGUMENT:-   Again, the Commonwealth did not comment to this clear and obvious issue of "The Commonwealth has no objection to immediate deportation in your particular circumstances?" District Attorney's Office was deceptive and has failed to directly answer Mr. Saleem allegation. Respondent's Memorandum in Response to Petitioner's Petition For Writ of Habeas Corpus, is silent and there is no answer to this regards.

Although, Honorable Habeas opinioned in Court's Memorandum dated December 11, 2019, at page 2, pp 2 as follows;

> "...   The PCRA court held a hearing and ultimately denied the PCRA petition, finding that immediate deportation was not a part of the plea agreement. (Doc. 13-19; Doc. 13-23). Rather, as part of the plea agreement, the District Attorney's Office agreed that it would have no objection to deportation and would not take any action to prevent deportation. (Doc. 13-19, p. 42; Doc. 13-23, p. 10)"

Yet, Habeas Court has overlooked the "Writ of Habeas Corpus Ad Prosequendum" which was filed on June 10, 2015. As notified in paragraphs 13 through 23, this writ was filed in bad faith, and was solely reason to stop Mr. Saleem's deportation. Action or inactions of the Commonwealth in regards to this Writ, constitute direct violation to the agreement "Commonwealth has no objection to Mr. Saleem's immediate deportation". District Attorney's Office abuse discretion and did not care for noble duty when, purposely hinder

the facts of the Writ of Habeas Corpus Ad Prosequendum from this Honorable Habeas Courts, i.e.;

i. There was no schedule Court appearance on June 16, 2015, at 8:30 A.M., contrary to the elements of this Writ. Actually, there was no hearing of any kind was held at all, on or around June 16, 2015.

ii. There were no pending charges of any kind, contrary to this Writ.

iii. At the conclusion of this Writ, Mr. Saleem was not set back to ICE custody, contrary to this Writ.

iv. Finally, why this Writ was filed, if there was no scheduled Court hearing and why Mr. Saleem was transferred to DOC. (See Exhibit "A")

ISSUE NO. III. The following issue was raise in the federal habeas petition at page No. 5-6. And was supported with **Exhibit B**, in the habeas petition.

On June 10, 2015, Saleem was sent a letter by his attorney, Warner, which stated that: "The District Attorney's Office was indicated me that [the victim] apparently contacted her Congressman and ICE is reconsidering your deportation status."

ARGUMENT:- Commonwealth, specifically District Attorney's Office was deceptive or failed to directly answer that why they call Mr. Saleem's trial attorney Mr. Warner, that a Congressman is involved and ICE is reconsidering the deportation. Yet facts are otherwise, it was not any congressman or ICE, it was Commonwealth itself who file the Writ of Habeas Corpus Ad Prosequendum on the same day. (See Exhibit "A" and Exhibit "C")

District Attorney's Office was aware of that Writ has been initiated by their own office. Yet they involve trial attorney Mr. Warner to cover-up the wrong doings. The above said Writ and the letter from trial attorney, was intentional fraud, misrepresentation and delibrate misconduct by the both District Attorney's Office and the Attorney Warner. It could not be a co-incident that both the letter and the Writ was generated same day.

And top of that information in both the Writ and the letter was false.

Further, Commonwealth has recklessly disregarded, hinder the facts of the Writ of Habeas Corpus Ad Prosequendum and the facts described in the letter of Mr. Warner, from this Habeas Court. Commonwealth again specifically District Attorney's Office, was deceitful, abuse discretion by moving goal post or by hindering the facts of the Writ and the information provided to Mr. Warner. These outrageous actions or inactions of the Commonwealth constitute intentional fraud or deliberate misconduct to the Habeas Courts.

ISSUE NO. IV. The following issue was raise in the federal habeas petition at page no. 7 to 8.

"... Finally, the prosecutor claims that immediate deportation was not a condition of the plea agreement. Id. at 22-23. She was equivocal on whether, or to what degree, immediate deportation was part of the plea agreement. Id at 24. However, the written plea agreement states that the "Commonwealth has no objection to immediate deportation." Exhibit C, p. 6."

ARGUMENT:- By filing a Writ of Habeas Corpus Ad Prosequendum, with false information, District Attorney's Office / Commonwealth has violated the terms of the plea agreement. District Attorney's Office was deceptive and hinder the answer to this clear and obvious issue form the Habeas Courts. Throughout federal habeas proceeding, District Attorney's Office use all the tacks to hide the facts and never explain that why the Writ of June 10, 2015 was filed, yet there was no schedule Court appearance on June 16, 2015. Mr. Saleem claims that District Attorney's Office has not admit to the false information in the Writ to this Habeas Courts.

Honorable Habeas Court has overlooked that Commonwealth has interfered with Mr. Saleem's deportation by filing a false Ad Prosequendum.

Mr. Saleem was to be deported in June of 2015. More than six (6) years delay in immediate deportation, due to the false Writ, has Mr. Saleem is prejudice. If the false Writ of habeas Corpus Ad Prosequendum was not filed, Mr. Saleem would have been deported to his home county.

## CAUSE AND PREJUDICE
## AND/OR MISCARRIAGE OF JUSTICE

Mr. Saleem has established the cause of the action in the previous paragraphs 13 through 24. Enforcing a waiver would work a miscarriage of justice. Circumstance briefly explained including the Writ of Habeas Corpus Ad Prosequendum file with false information, then another false information provided to the trial attorney, which can be found in attorney Warner's letter, false information was provided to Mr. Saleem's wife and then finally at the time of PCRA hearing District Attorney's Office had chance to correct the false information, were so unfair that miscarriage of justice occurred which no civilized society can tolerate.

In the plea agreement, Commonwealth agreed with "No objection to immediate deportation" yet object and interfere in to the one clause of the plea agreement. Then sent for confinement instead sending back to ICE for immediate deportation, constitute a complete miscarriage of justice.

Fundamental defect at the implementation of plea agreement causing a complete miscarriage of justice. Commonwealth's actions were inconsistent with the ordinary demand of fair procedure, when a Writ was filed, and then signed by Judge Tylwalk, verified by clerk of court Barbra Smith, Distirct Attorney's Office provide false information to the trial attorney, Mr. Saleem's wife and at PCRA hearing. If the Writ was not filed or Mr. has sent back to ICE custody Mr. Saleem would be deported, Mr. Saleem was prejudice due to these action. Further, all the Commonwealth officials fails to verify and make correction where needed, constitute miscarriage of justice.

Guaranteed "NO objection to immediate deportation" was Mr. Saleem's fundamental constitutional right, violation of these constitutional rights, and the courts did not consider the claims prejudice Mr. Saleem, since he would be in Pakistan from last six (6) years insted send him to jail. Fundamental miscarriage of justice would result from its dismissal.

The Writ of Habeas Corpus with the false information, undermines the conclusion that Mr. Saleem is going to be deported in June of 2105. First the Writ was filed with a false information and then Mr. Saleem was not sent back to ICE custody. Lebanon County's actions were inconsistent with plea agreement made by the Lebanon County and also due process of law. There was Lebanon County who violate its own agreement. Then inform attorney Warner that it was a congressman and ICE is reconsidering Mr. Saleem's deportation is a professional misconduct. These action are sufficient to violation of due process and negate the honesty.

Specifically, when Mr. Saleem wrote a letters to Honorable John C. Tylwalk (who sign the Writ), filed and docket on August 20, 2019. (**See Exhibit "L"**). Mr. Saleem wrote a second letter to sentencing judge Bradford H. Charles, which was filed and docketed on August 20, 2019. (**See Exhibit "M"**). Despite all the efforts made by Mr. Saleem, yet no answer was given to his concerns. Mr. Saleem never was explained that who was responsible for the interference with any facts and evidence. In recollecting the Writ, the only indication of involvement is Lebanon County. Commonwealth alone is responsible for that omission, further undermining their attempt to paint that it was federal government.

Lebanon County is hiding the full truth about why the Writ was filed. It is inconclusive that it is Lebanon County who interfere in the deportation process. Additionally it appear to contemplate the possibility of a congressman's involvement in determining that trial counsel's deficient performance prejudice Mr. Saleem. Superior Court also disregards the involvement of Lebanon County the Writ, without finding the facts and evidences. These intentional actions demonstrate extreme misconduct is an extraordinary circumstances.

26.. **Rule 60 (B)(4)** - The Judgement is Void

Mr. Saleem seeks relief from a final judgement, and requests reopening of his case, under set of circumstances including lack jurisdiction due to a false Writ of Habeas Corpus Ad Prosequendum (a written request for termporary custody), filed on June 10, 2015. This Writ was filed knowingly and purposely, in a bad faith that there is alleged scheduled court appearance on June 16, 2015. (See Exhibit "A").

Writ of Habeas Corpus Ad Prosequendum constituting "written request for temporary custody" within the meaning of Agreement;
United States V. Mauro, 436 U.S. 340 98 S. Ct. 1834, 56 L. Ed. 2d 329 (1978).
The sovereign that the first arrests the individual has primary custody over individual until custody is relinquished.
(See Weeks v. Fleming, 301 F.3d 1175, 1180 (10th Cir 2002)
The second sovereign - in this case, Lebanon County - was therefore merely "borrowing" Mr. Saleem from the federal authorities (ICE), on a faulty Writ, for the solely purpose of alleged scheduled court appearance. It is Mr. Saleem's contends that his due process rights has been violated when he was borrowed from ICE custody by filing a false document (Writ). Such filing is voidable since, no such hearing was held on June 16, 2015 at 8:30 or ever at all.

Mr. Saleem was not returned to custody of federal government or ICE instead was entered into custody of DOC. Mr. Saleem has to return to ICE custody subsequently after, the alleged hearing of June 16, 2015, as directed in the Writ of Habeas Corpus Ad Prosequendum "at the conclusion of the said hearing, the said MOHAMMAD SOHAIL SALEEM is to be returned to the custody of the Sheriff of Lebanon County, or his designated representative, to be returned to your (ICE) custody.
(See Exhibit "A")

27. Mr. Saleem stays on bail from Lebanon County, even after he was arrested by the ICE, on March 02, 2015. Primary jurisdiction was also with the ICE. Because the federal government (ICE) retained primary jurisdiction, Lebanon County Court did not have authority to place Mr. Saleem into state custody for the purpose of commencing his sentence. The Court lacked authority/jurisdiction to order the commencement of Mr. Saleem's sentence.

Mr. Saleem asserts that this Writ of Habeas Corpus Ad Prosequendum, was filed with false information. Further, Mr. Saleem was not sent back to ICE custody after alleged hearing for June 16, 2015, violated his due process rights because;

i. Lebanon County Court lulled Mr. Saleem into a alleged scheduled court appearance, yet no such appearance was scheduled.

ii. Lebanon County Court was fundamentally unfair by not sending Mr. Saleem back to ICE custody, which rendered to violate constitutional due process rights.

28. Mr. Saleem was to be deported in the first half of June 2015, pursuant Immigration Judge Honorable Walter A. Durling's order of May 18, 2015. (See Exhibit "F")

Any and/or all actions from the Lebanon Court, including alleged court appearance, did result in the denial of Mr. Saleem's due process rights. The Sheriff of Lebanon County, or his designated representative did not properly returned Mr. Saleem to ICE custody and Mr. Saleem receive constitutionally deficient due process. Lebanon County Court proceedings was fundamentally unfair, when it was bound by agreement and obtained Mr. Saleem's custody by the mean of temporary (merely loan). Custody was taken by the means of Ad Prosequendum, which includes that upon conclusion of the (Lebanon County) proceedings, Mr. Saleem was to be returned to the sending authority (ICE).

29. Mr. Saleem contends that he was in ICE custody and primary jurisdiction was also with the ICE. Lebanon County acted in

the manner of inconsistent with due process of law and files a faulty Writ of Habeas Corpus Ad Prosequendum (a written request for temporary borrowing) based upon false information. Jurisdiction was taken over by a false information, which violate his due process rights.

The Fifth Amendment to the United States Constitution guarantees that not to deprive any person of life, liberty or property without due process of law. In this matter Mr. Saleem was brought into Lebanon County without due process of law, when a faulty Writ of Habeas Corpus Ad Prosequendum was filed. Judgement should be set aside under Rule 60(b)(4) because it is void. By filing a false information in the Writ, just to bring back Mr. Saleem to Lebanon County, not for the purpose of any hearing or court appearance, deprive him of due process of law or otherwise render the quit Writ was void.

30.   Mr. Saleem base his claim primarily on the number of contentions concerning the Writ, the manner of the Writ was filed. Lebanon County;

a.   acquired jurisdiction over Mr. Saleem by providing false information;

b.   Mr. Saleem was on borrowed for a certain purpose (alleged scheduled court hearing on June 16, 2015), rest of the actions are without due process of law; and

c.   Lebanon County used an improper source of jurisdiction was transferred to DOC rather than back to ICE custody.

d.   Lebanon County could have simply return Mr. Saleem to ICE custody, when they find that there is no hearing on the June 16, 2015.

e.   It was right of Mr. Saleem to inform him why he was pulled from ICE custody, and why was not returned to ICE.

f.   Another different, yet still false information was provided to attorney Warner that a congressman or ICE is reconsidering Mr. Saleem's deportation process. (See Exhibit "C")

31. This Honorable Court must examined that;

i. Whether these contentions, go beyond and outside of the jurisdiction - power of Lebanon County;

ii. If there is any statue clearly grants Lebanon County court jurisdiction to entertain Mr. Saleem's transfer to DOC;

iii. Whether the judgement in such case would bind over Mr. Saleem, since Lebanon County do not have jurisdiction;

iv. Whether Lebanon County has statutory authority to acquire jurisdiction on a intentional false claims and then use improper source of Writ to transfer to DOC;

v. This Court must examined that whether this matter is inconsistent with due process of the law of 5th Amendment or Mr. Saleem was denied his due process right because of this Writ;

vi. If any and/or all the proceedings after filing the false Writ on June 10, 2015 and or after the alleged court appearance on June 16, 2015, should consider null and void;

vii. Whether there is any other obstacle, hurdle, or reason, other than the Writ of June 10, 2015, which interfere and then stop Mr. Saleem's deportation;

viii. Whether District Attorney's Office was really correct or cover-up their wrong doings, when it was indicated to Attorney Warner, that there was any congressman involved and ICE reconsidered Mr. Saleem's deportation;

ix. Whether Honorable Bradford H. Charles is correct, when opinion that, "I don't know why the federal government choose not to deport him (Mr. Saleem);

x. Finally, who exactly interfere and stop the deportation.

32. **Rule 60 (B)(6)**

Extraordinary Circumstances Permitting Relief From The Court's Previous Denial of Habeas Relief

**PROCEDURAL DEFAULT:-** In <u>Martinez v. Ryan</u>, 566 U.S. 1, 132 S.Ct. 1309, 182 L. Ed. 2d 272 (2012) the Supreme Court of the United States held that error by post-conviction counsel can constitute cause to overcome the procedural default of substantial ineffective assistance of trial counsel claims. Mr. Saleem here, moved for relief pursuant to Federal Rule of Civil Procedure 60(b)(6) on the heels of <u>Martinez</u>.

Mr. Saleem argues that <u>Martinez</u> permitted the district court to consider (2018 U.S. Dist. LEXIS 2) the merits of ineffective assistant of trial counsel of trial counsel claims the court previous deemed procedurally defaulted during the court's initial consideration of his section 2254 habeas corpus petition.

With the combination of <u>Martinez</u> and additional factors, not consider by the district court, Mr. Saleem should entitled to 60(b)(6). Mr. Saleem has diligently pursued his defaulted ineffective assistance of trial counsel claims, and those claims are meritorious and substantial, as required by <u>Martinez</u>.

33. Because Mr. Saleem's motion does not attempt to challenge the Court's resolution of the previous habeas on the merit, include a new claim for relief, or directly challenge his conviction or sentence, it is not considered a second or successive habeas petition. Rather, Mr. Saleem's 60 (b) motion seeks to renew his initial petition by challenging the integrity of the habeas proceedings. Thus, it can be reviewed on the merit.

34. **FACTUAL BASIS OF THE PLEA AGREEMENT**

Mr. Saleem claims that at the guilty plea hearing, the trial court failed to meet the minimum requirements for the guilty plea colloquy. Trial court failed to ensure that the "factual basis" for the plea was provided and this omission is clearly absent. (N.T. April 21, 2015, at 1-6)

Trial counsel's failure to assure that this mandatory requirement was carried out denied Mr. Saleem, his due process rights under the Fourteenth Amendment and Sixth Amendment right to effective counsel. During the the initial-collateral review, PCRA counsel failed to raise this claim, which is now procedural default. See Martinez v. Ryan, 566 U.S. 1, 6-18 (2012). Specifically, the Martinez Court held that;

> [A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective. Martinez, 566 U.S. at 17.

35. Some of the deficiencies might have been explained away, if the trial court established that the totality of the circumstances show Mr. Saleem did fully understand the nature of the charges and the "factual basis" to his plea. However, the colloquy on its face fails to pass muster in two significant respects;

1. There never was an explanation of the elements of the crimes, either in the oral colloquy or the written guilty plea colloquy; there in no indication that Mr. Saleem understood the nature of the charges.

2. Neither the Court nor the Commonwealth adduced a sufficient "factual basis" underlying the charges on which the plea was based. Rather than indicate what evidence or witness would be produced to establish the offenses, the Commonwealth Court merely issued a bald statement that "And in your case on Action number 2014-565 Counts One, Two, Five, and Six will be dismissed. You're pleading guilty, therefore to Counts Three and Four which are the two Counts of indecent assault."

36. Unfortunately, trial judge attempts to short-cut the process and, in doing so, fails to satisfy even the minimum standards for a guilty plea colloquy. In this case colloquy comprises only three (3) pages of notes of testimony, and probably took less than five minutes to conduct.

### a. Failure to explain the elements of the crimes

37.   Trail attorney Mr. Warner, ask Mr. Saleem to sign the written colloquy without explaining the colloquy questions and explaining any other rights, including right to trial by jury. Just signing a written plea colloquy in not enough to meet constitutional and legal safeguard. Pennsylvania Rule of Criminal Procedure 590 requires the court to conduct an "on-the-record" plea colloquy to ensure that a defendant's plea is knowingly and voluntarily tendered. "The guilty plea colloquy must affirmatively demonstrate that the defendant understood what the plea connoted and its consequences."
Commonwealth v. Lewis, 708 A.2d 497, 501 (Pa. Super. 1998) (citation omitted). This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea.

38.   At a minimum, the plea colloquy must inquire into the following six areas:
   (1) the nature of the charges;
   (2) the factual basis of the plea
   (3) the right to trial by jury;
   (4) the presumption of innocence
   (5) the permissible range of sentences; and
   (6) the judge's authority to depart from any recommended sentence.
Commonwealth v. Muhammad, 2002 PA Super 55, 794 A.2d 378, 383 (Pa. Super. 2002) (citation omitted); Comment to Pa. R. Crim. P. 590. The law has long emphasized the necessity of an on-the-record demonstration that the defendant understood the elements of the crime, as well as conditions of the plea.

39.   In this case, nowhere in the record has been such showing. There is absolutely nothing in the oral colloquy, or anywhere else, that explains the elements of either charge of Count three or Count four and any explanation that Mr. Saleem had a right to trial by jury. While the trial judge stated that Mr. Saleem

pleading guilty to Count three and Count four, he never explained what elements of those ("Counts") were and Mr. Saleem has right to trial by jury.

40. The written colloquy likewise silent regarding the elements of the crime. It merely lists the crimes. Mr. Saleem certainly right to know that to make out the crime of Count three and Count four. The situation in this respect is afflicted with a great constitutional and legal shortcomings. The record is devoid of any showing that Mr. Saleem understood the elements of the crime or that anyone explained them to him.

In Commonwealth v. Willis, 471 Pa. 50, 369 A.2d 1189 (Pa. 1977), the Pennsylvania Supreme Court unequivocally held, "failure to satisfy any of six minimum requirement will result in reversal". See also Commonwealth v. Flanagan, 854 A.2d 489 (Pa. 2004) (failure to satisfy one of the six, requirements, viewed in totality of circumstances which revealed a second error in the plea process, rendered guilty plea involuntary and unknowingly.)

b. **Failure to state a factual basis for the plea**

41. Our Supreme Court, in Commonwealth v. Hines, 496 Pa. 555, 437 A.2d 1180 (Pa. 1981), stated;

> "Because a guilty plea is not only an admission of conduct but also is an admission of all the elements of a formal criminal charges, and constitute the waiver of constitutionally-guaranteed rights, the voluntariness of guilty plea must be affirmatively established."

In order to satisfy the constitutional requirement that a valid guilty plea must stand as an "intelligent admission of guilt" the law of this Commonwealth has long required that before a judge may properly accept a plea of guilty, a colloquy with the defendant must demonstrate that there is a factual basis for the plea and defendant understands the nature and elements of the offense charged. 437 A.2d at 1182.

42.  The circumstances in <u>Commonwealth v. Belleman</u>, 300 Pa. Super. 209, 446 A.2d 304 (Pa. Super. 1982), was that the defendant plead guilty to the charges of escape and indecent assault. The following **factual basis** was added during the colloquy;

> "After being granted permission by Sterling Clements, a prison guard, to go to bathroom at Seventh and Lehman Streets while you were on work detail with the Lebanon County Prison, that you failed to return and that you left, you ran from Mr. Clements and did not come back to prison? 446 A.2d at 306."

The <u>Belleman</u> Court expressed dissatisfaction with the above factual basis, and delving deeper into the record, observed that the record was completely <u>devoid</u> of <u>any</u> <u>description</u> of <u>the</u> <u>elements</u> of <u>the</u> <u>crime</u> of <u>escape</u>. Id. at 307. The Court determined that these deficiencies produced an invalid plea, and accordingly reverse and remanded for trial. Id. at 308.

43.  In the instant case, acts of emissions of the trial court are much more aggressive and far greater than <u>Belleman</u>. Mr. Saleem was not informed of the elements of <u>either</u> offenses, and no **factual basis** even exits at all, again, far more superficial than that in <u>Belleman</u>. A fortiori, the deficiencies in instant case warrant new trial. The instant case contains an additional, material **error** - -i.e.,

a.  Both written and vocal colloquies are completely silent and not have even **single line** that describe anything about nature or element of the crime.

b.  Trial Court play another short-cut, when Mr. Saleem and other defendants for different charges took a joint plea.

c.  Complete absence of statements explaining the elements of either charge.

d.  On written plea Mr. Saleem answer to the question "Are you United States citizen? **"Yes"**. Mr. Saleem is not a United States citizen. Both the trial attorney and the trial court was unable to explain this issue. (See page 5 of 6 at pp 30)

44.  However, it could be fairly argued that the errors plaguing the instant case are even greater that those in <u>Flanagan</u>.

In _Flanagan_, the compounding error was that the accused was misinformed on one of the many relevant principles of law; whereas here, the accused (Mr. Saleem) was not informed as to any of them, for either offense. Thus, the errors surrounding Mr. Saleem's guilty plea are certainly tantamount to those in _Flanagan_, upon which our Supreme Court granted relief. The record, comprised of both the written and oral guilty plea colloquies, is totally silent on what evidence the Commonwealth had with which it could prove the charges. This is a normal way to established a factual basis for a guilty plea.

45. In _Commonwealth v. Morrison_, 878 A.2d 102, Honorable Judge Klein opinioned;

> Ordinarily, the response to question such as the one posed by the trial judge in this case, "Do you want to summarize the facts?" includes the facts that would be introduced into evidence. One could expect the detective to say something like, "Harry Smith, the clerk in Highway Oil, 441 East Main Street, Mountville, PA, would testify that on September 26, 2001, three men came into the store. He would testified that Morrison put a gun to his head and demanded the money from the register, and he gave him $99. He called the police as soon as the three men left, and just a few minutes later, was approached by a officer who took him to a location one block away where he identify Morrison and the other two men as those who robbed him. Officer Jones would testify that, he receives a radio call of a robbery at the gas station, and by coincidence, he was at the same block when he saw Morrison and two other men running from the store. He caught and detained them. The clerk came to the scene from the store only a block away, and positively identified Morrison as the man with gun." This is the recitation of admissible testimony that establishes a factual basis for the plea. Merely reciting what happened, much less in the most generic terms. is not enough. If someone is going to waive his constitutional protections and give up the right to trial, he must do so intelligently, and to do so, he should know whether the Commonwealth has enough evidence to prove its case. On its face, the record in this case is devoid of any such information"

46. In this matter, Mr. Saleem was never explained, what he have charged with; what he have done; what evidence Commonwealth like to introduce; Is there any witness.

Therefore, this guilty plea violate Mr. Saleem's state and

federal constitutional rights. Trial court was non-compliance with the six, straightforward and relatively modest requirement that set the baseline for a valid guilty plea colloquy.

### Cause and Prejudice

47. A showing of cause demands that a petitioner establish that 'some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule' Coleman, 501 U.S. at 573. Once cause is proven, a petitioner's actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986).

Mr. Saleem has already demonstrate in paragraphs 32 through 46, that the claim has merit and becomes substantial for the purpose of Martinez.

48. Due process required that a guilty plea be voluntary, knowing, and intelligent. Boykin v.Alabama, 395 U.S. 238, 243 (1969). In this matter, Mr. Saleem plead guilty to crimes in absence an any showing that he has had explained and he understands all of his constitutional rights and protections, including the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury, and the tight to confront one's accusers. In Boykin the United States Supreme Court emphasized the importance of judge's duty in ensuring that criminal defendant have full understanding of what the plea connotes and its consequences by "canvassing the matter" on the record. Boykin, 395 U.S. at 243-44.

49 In this matter, instead "canvassing the matter", the judge rely upon "summarizing the matter" or "short-cut-method" and offer a very generic colloquy, together with other defendant from a totally separate criminal action as a "joint plea".

Further trial judge fail to ensure that if Mr. Saleem understand the nature of charges against him and the constitutional protections that he is waiving. Here, there is no criminal information was provided at all, charges was listed merely as Count three and Count four, without providing critical information and the facts about the incident. Written guilty plea colloquies, missing altogether the nature of the charges to which he was pleading guilty. Records shows that there was no criminal information provide at all to Mr.

Saleem to read. Mr. Saleem was in ICE custody on the time of guilty plea phase, and never was provided with criminal information.

During the oral plea colloquy, the trial court did not recite or made any effort to ensure that Mr. Saleem understood that he was entering a guilty plea to indecent assault without elements of the crime.

50. Mr. Saleem avers that a failure to review this claim will result in a fundamental miscarriage of justice. Mr. Saleem avers that, if elements of the crime and the factual basis exists, he would choose trial by jury and Commonwealth is unable to prove the elements of crime. Mr. Saleem is "ultimate prejudice" by not reviewing the evidence against him, totality of evidence, and the evidence that would have been presented if the counsel has conducted a through investigation. By no facts of the crime, no elements of the the crime, no factual basis of the plea, and the acts and omissions of the trial counsel cores Mr. Saleem to guilty plea instead choose trial by jury.

51. Mr. Saleem suffered prejudice because he was unaware of what evidences, he could have cross examined and challenged. Trial counsel fails to object to the trial court's failure to conduct a jury waiver colloquy. Commonwealth v. Mallory, 941 A.2d 686 (Pa. 2008). If Mr. Saleem offer jury trial, Mr. Saleem would have present his defense, could have challenge testimony, witnesses and other evidences if available. It was hardship on Mr. Saleem to defend himself, in the absence of elements of crime and factual basis.

52. Mr. Saleem was prejudice and circumstances surrounding the entry of plea disclose that Mr. Saleem sign plea in absence of any element of crime and factual basis of plea and without evidence, video evidence, eye witness or any evidence at all. Further, one clause of plea agreement was "Commonwealth has no objection to immediate deportation." In this instant matter, Mr. Saleem was prejudice because later on Commonwealth did interfere, object and then stop his deportation. This plea agreement was violated when a Writ of Habeas Corpus Ad Prosequendum" was filed in bad faith. Mr. Saleem was bring back from ICE custody for a ghost hearing in Lebanon County, yet no hearing ever held in this regard. Involvement of Commonwealth and crucial violations has already been demonstrated in paragraphs 13 through 23.

## 53. BRADY VIOLATION

### A. PROCEDURAL DEFAULT:-

In <u>Martinez v. Ryan</u>, 566 U.S. 1, 132 S.Ct. 1309, 182 L. Ed. 2d 272 (2012), the Supreme Court of the United States held that error by post-conviction counsel can constitute cause to overcome the procedural default of substantial ineffective assistance of trial counsel claims. Mr. Saleem here, moved for relief pursuant to Federal Rule of Civil Procedure 60(b)(6), on the heels of <u>Martinez.</u>

Mr. Saleem argue that <u>Martinez</u> permitted the district court to consider (2018 U.S. Dist. LEXIS 2) the merits of ineffective assistant of trial counsel claims the court previously deemed procedurally defaulted during the court's initial consideration of his section 2254 habeas corpus petition.

With the combination of <u>Martinez</u> and the additional factors, not consider by the district court, Mr. Saleem should entitled to 60(b)(6). Mr. Saleem has diligently pursued his defaulted ineffective assistance of trial counsel claims, and those claims are meritorious and substantial, as required by <u>Martinez</u>.

54. Because Mr. Saleem's motion does not attempt to challenge the Court's resolation of the previous habeas on the merit, include a new claim for relief, or directly challenge his conviction or sentence, it is not considered a second or successive habeas petition. Rather, Saleem's 60 (b) motion seeks to renew his initial petition by challenging the integrity of the habeas proceeding. This, it can be review on the merit.

55. Mr. Saleem claims that at the pretrial phase, the trial attorney failed to meet minimum requirement for the exculpatory value of Digital Video Recorder ("DVR"), a video taped evidence contains proof of innocence based upon said evidence creating an alibi for Mr. Saleem.

Trial counsel's failure to assure that this mandatory requirement of proof of innocence, was carried out denied Mr. Saleem, his due process rights under the Fourteenth Amendment and

Sixth Amendment right to effective counsel. During the initial-collateral review, PCRA counsel failed to raise the claim, which is now procedural default. See Martinez v. Ryan, 566 U.S. 1, 6-18 (2012). Specifically, the Martinez Court held that;

> "[A] procedural default will not bar a federal habeas court from hearing a substantial claims of ineffective assistance at trail if, in the [state] initial-review collateral proceeding, there is no counsel or counsel in that proceeding was ineffective. Martinez, 566 U.S. at 17.

56. Mr. Saleem contends that the claim of Brady Violation was previously presented and procedurally defaulted as Honorable Habeas Court opined;

> "To properly exhaust his state remedies, Saleem was required to fairly present his Brady claim to the state court, either on direct appeal or by collateral review. See Castille, 489 U.S. at 349-50; Blasi v. Attorney General of Pa., 30 F. Supp. 2d 481, 487 (M.D. Pa. 1998). The record is clear that Saleem waived his claim under state law. Therefore, the Brady claim is procedurally defaulted and will be addresses on upon a showing of cause and prejudice or a fundamental miscarriage of justice. See Coleman, 501 U.S. at 750; Sistrunk, 96 F.3d at 673."

57. CAUSE AND PREJUDICE AND
    FUNDAMENTAL MISCARRIAGE OF JUSTICE

Commonwealth v. Dennis, 17 A.3d 297 (2011), defines that an alibi as a defense that "place the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." (Id., citing Commonwealth v. Roxberry, 602, A.2d 826, 827 (1992).

Specifically, Mr. Saleem contends this DVR or video provides proof of alibi as Mr. Saleem's exact whereabouts regarding the incident(s) in question found as a challenge of Actual Innocence. The well established definition of "Actual Innocence" is found in the United States Supreme Court decision in Schlup v. Delo, 524 U.S. 298 (1995), which clearly explained in the Superior Court of Pennsylvania's decision in Commonwealth v. Conway, 14 A.3d 101 (2011), which opined;

"T

"That the newly discovered evidence must make it "more likely that no reasonable juror would have found his guilty beyond a reasonable doubt' thus this standard requires the reviewing court to make a probabilistic determination about what reason, properly instructed jurors would do,' if presented with the new evidence."
(Conway, 14 A.3d at 109) (internal citations omitted)

58.    In this instant matter, Mr. Saleem contends that a Digital Video Recorder ("DVR"), was confiscated by the Lebanon City Police from his business location on or about March 21, 2014. This DVR contains a surveillance camera video data, for 15-30 days of activity, from seven (7) different cameras. This DVR would exonerate Mr. Saleem from all the allegations. And would shown lack of Mr. Saleem's presence within the store location submitted in the alleged victim's testimony showing for rebuttal of the alleged victim's account of events.

Since this DVR is still in possession of District Attorney's Office. The Commonwealth committed Brady violation when it failed to disclose the exculpatory video upon request. Favorable evidence was not handed over and was refused by the District Attorney's Office when they send an e-mail to trial attorney, Mr. Warner on or about December 20, 2014, stating;

"They're (District Attorney's Office) telling me now that they can't copy the hard drive and I'll have to go watch it at the DA's office or police department. I'm trying to set up a time to do that next week..."    (See Exhibit "G")

59.    In Brady, the United States Supreme Court held that; "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). To establish a Brady violation, a petitioner must demonstrate;

(1) evidence was suppressed by the state, either willfully or inadvertently;

(2) the evidence is favorable to accused, either because

it is exculpatory or impeaching; and

(3) that the evidence was material to the outcome of
the case.

60.    The materiality standard is satisfied when the evidence
places the "whole case in such a different light as to undermine
confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 434-
35, (1995). Further, this standard is satisfied "if there is a
reasonable probability that, had the evidence been disclosed, the
result of proceeding would be different." Strickler, 527 U.S. at
281-82.

In order for evidence to be material, it is not necessary that
evidence establish by a preponderance that disclosure of the
evidence would have resulted in acquittal. Kyles, 514 U.S. at 434-
35. However, in making determination of materiality, the assessment
of the omitted evidence's impact must take account of the
cumulative effect of the suppressed evidence standing alone. Id at
436-37.

61.    Mr. Saleem contends that commonwealth possessed the DVR
which is an exculpatory video, and failed to turnover under Brady.
As presented in paragraph 58, District Attorney's Office claim that
they were unable to make a copy, which is simply not correct. In
this modern age and time, technologies allow to copy a DVR through
inexpensive means. It is not possible that this DVR can not be
reproduced or copied.

Further, Mr. Saleem has similar DVR in another store location,
which he have made a copy from it and also was filed by Mr.
Saleem's wife, which was docketed on or about April 21, 2016, as
"Affidavit of New Video Evidence (DVD)." Mr. Saleem contends that
the DVR could be reproduced or copied without any technical
difficulties. It is simply will of District Attorney's Office, not
to reproduce or make a copy, not any other factor or technical
issue. For this reason, state is suppressing the evidences
willigly.

62. Mr. Saleem contends that this video involves exculpatory evidence, which show the absence of Mr. Saleem from the video during the alleged incidents, proving his factual innocence. However these evidence is favorable to Mr. Saleem and not only shows Mr. Saleem as actually innocence, it shows factual irrefutable proof of such innocence.

63. Mr. Saleem contends that the video evidence is material to the outcome of the case. This video teems with evidence that refutes the evidentiary testimony given by the alleged victim in the matter. It is Mr. Saleem's position said evidence contains the video, is the very lack thereof, the video will show that Mr. Saleem was not present in the areas that were testified to by the alleged victim. Such lack of Mr. Saleem's presence shows clear and convincing proof of Mr. Saleem's innocence. The General Assembly intended that an innocent individual should never be allowed to serve time for a "[crime] he did not commit."

64. In the instant matter, Mr. Saleem continue to request the review, and/or release of the video evidence. Such evidence will show that Mr. Saleem did not break into the bathroom, nor did follow the alleged victim into the bathroom. However, through the extensive requests, the video has never been produced. Counsel of defense David R. Warner and PCRA counsel Ms. Weisenberger, within a civil action admitted that "The District Attorney's Office was unable to provide a copy of the surveillance camera video due to technical difficulties in recording or burning a copy of the video file." See Exhibit "G"

65. Such "extraordinary circumstances" are outlined by the fact that the evidence is alleged to be exculpatory. Furthermore, it is position of Mr. Saleem that existence of DVR is known to him but the contents was never disclose to him. Which means, Mr. Saleem install this surveillance camera system with the reason that it could be retrievable as evidence in this type of situation. It is also in the knowledge of Mr. Saleem that this digital video

recorder was confiscated by the Lebanon City Police a Commonwealth agency, also it is in Mr. Saleem's knowledge that this video never revealed. Mr. Saleem has never viewed the contents of the video, yet knows from his business location within said video that he is factually innocent of the alleged acts. Furthermore, it is position of Mr. Saleem that he simply plead guilty to the charges with the agreement of "Commonwealth has no objection to your immediately deportation." Within the sentencing, Mr. Saleem himself presented this point, when he stated that;

"**Mr. Saleem:** The reason I plead, Your Honor, is because they were going to try to to deport me so I think that was my best road so I can plead to two counts or whatever. Like, I'm going to be away from my family. This way, if I come back, you can put whatever you want on me. So since, I'm not coming back anyway. I don't know what to say."

(See Exhibit "H" N.T. Sentencing June 3, 2015, 18: 16-22)

66. "Society views the conviction of an innocent person as perhaps most grievous mistake our judicial system can commit." Satterfield v. D.A. Phila, 872 F.3d 152, 154 (2017).

Mr. Saleem's contention that the evidence presented in exculpatory in nature requires the prosecution to disclose information regarding his factual innocence. The fact that video recording showing Mr. Saleem not being present in the areas required to commit the criminal acts would prove Mr. Saleem is factually innocent of the crime make it clearly 'more like no reasonable juror would have found guilty beyond a reasonable doubt'.

67. Consequently, it is the position of Mr. Saleem that the Digital Video Recorder video should be permitted to be reproduced and/or viewed by the judicial officer under the premise of the actual innocence for Mr. Saleem to applicable prove his innocence of this crime. It is Mr. Saleem's position and strong believe that this DVR video evidence will clear or tends to clear from alleged fault or guilt. Such evidence when revealed by the defendant can be utilized through the judicial process to over-turn or eliminate the conviction of an innocent individual.

68.  UNDEROATH , FALSE STATEMENTS BY THE ALLEGED VICTIM

In the instant matter, the alleged victim testified at the
preliminary hearing;

"A.  In multiple rooms there on multiple occasions he was --
just he'd touch my butt or or touch my breasts and try to put
put his hands in my shirt, try to kiss me. I kept moving away
from him, and that day i told him to stop countless times."

(See **Exhibit "I"**,  N.T. Preliminary hearing, April 3, 2014, Page
20, lines 15-19)

Furthermore,  alleged  victim  also  stated  in  her  written
statement;

"Wednesday 3/19/14 we were both at the Myerstown location and
he tried to put his hand in my pants. I said no-please-stop
then it resulted in him saying he wasn't going to pay me. I
said whatever then dont. I left shortly after. He did end up
paying me but deducted 25 hours of my time saying I still owed
him from January."

(See **Exhibit "J"**, Page 10 of Written Statement, last paragraph)

69.  However, the testimony from the preliminary hearing  "
**just he'd touch my butt or touch my breasts and try to put hand in
my shirt, try to kiss"** did not add up and clearly contradict with
the other testimony for the same alleged incident, with the written
statement  **"he tried to put his hand in my pants".**

Mr. Saleem's argument is, first and far most the testimony for
the same alleged occasion have two totally separate allegation (try
to put hand in my shirt or try to put his hand in my pants). Yet
the both allegations are false and were made in bad faith. Mr.
Saleem is presenting actual facts in the form of 22 still shots for
the alleged incident. These pictures will prove that statement made
at the time of preliminary hearing and the written statement, by
the alleged victim's are simply not true. Facts are that Mr. Saleem
was leaving home he have is winter coat on, his computer bag is on
his shoulder. Before leaving, he went to back room to put few items
on the shelf. It was actually the alleged victim who followed Mr.
Saleem into the back room.

(See **Exhibit "K"**, 11 pages contains 22 still shot from the
DVD)

Mr. Saleem unable to attached a copy of the actual DVD
(Digital Video Disc), since he is in prison. But the DVD has been
entered by Mr. Saleem's wife on Lebanon County docket number 0565-
2014, along with a Motion of "AFFIDAVIT OF NEW VIDEO EVIDENCES
(DVD). The Motion and the DVD was entered and docketed on April 21,
2016.

Mr. Saleem contends that this Honorable Court must consider
these evidences (pictures and DVD). This DVD and the still shots
would prove that the alleged victim's testimony is false in the
both written statement and testimony at the time of preliminary
hearing.


70. Mr. Saleem contends that alleged victim further lied
under oath when she stated in her written statement that " ... he
**did end up paying me but deducted 25 hours of my time saying I
still owed him from January."** See Exhibit "J", last paragraph)

Mr. Saleem contends that alleged victim has lied again and
make a false statement under oath. According to alleged victim's
written statement, alleged incident happened on **Wednesday 3/19/14,**
and the written statement was signed on 3/21/14, which is **Friday,**
just two days after the alleged incident. Payroll for the work week
was not due on the time of allegations were made and written
statement was made.

This written statement by the alleged victim did not simply
add up, and is another try for false accusations. There is no
reality in these claims. How possibly alleged victim already knows
that what is going to happened in future? Question is how alleged
victim know something on **Friday the 3/21/14,** when hours of work was
not even reported till **"NEXT WEEK"**? Technically total number of
hours could be not reported before week is not over yet. Then
accountant will calculate and make payroll in the following week to
be picked-up. Conclusion is there is no way around that any one
could have know on Friday 3/21/14 around 11:30 A.M. for something
is going to happened in the following week.

71. Mr. Saleem has provided three separate false statement and rock solid proof of lies, of the alleged victim. Honorable Court must consider the theory of "Lie in one lie in all" here. Now question is if alleged victim has made false allegation which could be proven by the picture, DVD, and proof of payroll system, Is alleged is trustworthy, honest and fair making other allegations? Answer is simply "NO".

Keeping in mind previously false allegation, Mr. Saleem could also prove that allegation made from the another occasion also contradict with the facts and evidences. These allegation are also recorded on a Digital Video Recorder, (DVR), which was confiscated by the Lebanon City Police and was never provided to Mr. Saleem. This DVR record 24/7 from seven different cameras. In the absence of this exculpatory video evidence, Mr. Saleem could never prove his innocence and miscarriage of justice would resulted.

72. Where District Attorney's Office obtained a conviction against Mr. Saleem, which was based upon the allegation made from a store location. The store location was equipped with seven surveillance cameras which also record the areas of allegation in the store. One of the camera was facing towards bathroom door. Where allegation are made that Mr. Saleem has followed her into the bath room twice and also has broke into the bathroom. These alleged events must be recorded since a camera is facing bathroom door. District Attorney's Office has failed to disclose exculpatory video evidence. Further District Attorney's Office has failed to correct the alleged victim's testimony at preliminary hearing and in the written statement. Mr. Saleem is entitled for new trial because the proceeding were so unfair that a miscarriage of justice occurred which no civilized society can tolerate.

73.  Mr. Saleem avers that failure to review the claim of Brady
violation will result in a fundamental miscarriage of justice. If
Commonwealth have release the favorable evidence of surveillance
camera video, he would choose to go to trial by jury and
Commonwealth is unable to prove the case. Mr. Saleem is "ultimate
prejudice" in the absence video evidence. There is reasonable
probability that, had the surveillance video evidence been
disclosed, Mr. Saleem would have go to trail and the results of the
proceeding would be different.

74.  Mr. Saleem suffer prejudice in the absence of exculpatory
video, which contains the evidence of innocence. Trial counsel
fails to get a copy of the surveillance camera recording. If Mr.
Saleem offer such evidence, he would have present his defense and
would have exonerate in the alleged crime. It is hardship on Mr.
Saleem to defend himself, in the absence of a copy of surveillance
camera video.

Mr. Saleem was prejudice and circumstance surrounding the
entry of plea disclose that Mr. Saleem sign plea after the failure
to provide him a copy of the exculpatory video evidence.
**See Exhibit "G"**

75. **BIAS**

A. PROCEDURAL DEFAULT:-

In <u>Martinez v. Ryan</u>, 566 U.S. 1, 132 S.Ct. 1309, 182 L. Ed. 2d 272 (2012), the Supreme Court of the United States held that error by post-conviction counsel can constitute cause to overcome the procedural default of substantial ineffective assistance of trial counsel claims. Mr. Saleem here, moved for relief pursuant to Federal Rule of Civil Procedure 60(b)(6), on the heels of <u>Martinez</u>.

Mr. Saleem argue that <u>Martinez</u> permitted the district court to consider (2018 U.S. Dist. LEXIS 2) the merits of ineffective assistant of trial counsel claims the court previously deemed procedurally defaulted during the court's initial consideration of his section 2254 habeas corpus petition.

With the combination of <u>Martinez</u> and the additional factors, not consider by the district court, Mr. Saleem should entitled to 60(b)(6). Mr. Saleem has diligently pursued his defaulted ineffective assistance of trial counsel claims, and those claims are meritorious and substantial, as required by <u>Martinez</u>.

76. Because Mr. Saleem's motion does not attempt to challenge the Court's resolation of the previous habeas on the merit, include a new claim for relief, or directly challenge his conviction or sentence, it is not considered a second or successive habeas petition. Rather, Saleem's 60 (b) motion seeks to renew his initial petition by challenging the integrity of the habeas proceeding. This, it can be review on the merit.

77. **CAUSE AND PREJUDICE**
   **AND/OR MISCARRIAGE OF JUSTICE**

Mr. Saleem asserts that the the Judge Charles displays and demonstrated bias against him, because of his nationality and/or religion. It is widely recognized that justice must satisfy the appearance of justice. Judge Charles demonstrate bias, based upon the comments he made that "gave rise to an appearance of impropriety." Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194, 2198 (1988). " A fair trial is a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of the case. But our system of law has always endeavored to prevent even the probability of unfairness." Offutt v. United States, 348 U.S. 11, 14, 75 S.Ct. 11 (1954).

78. Mr. Saleem contends that Judge Charles acted below the standards of fairness, when Mr. Saleem had has already signed a negociated plea agreement with a clause "Commonwealth has no objection to his immediate deportation." Instead Judge Charles, response to the prosecutor's assertion which was according to the plea agreement, that Mr. Saleem would never be allowed to return to America, once deported, Judge Chrles demonstrate bias and stated;

> "Let me give a hypothetical. Let' say that he's over in Pakistan, He comes into knowledge about a terrorist. He goes into the United States Consulate and he says, I'll give up this terrorist, I'll let you know where he is, I'll let you know where he's staying, but you are going to have to let me come back and live with my family in America, Now, then that happened - if that happened - the federal government is going to say, hum, we can take out a terrorist who's dangerous to thousands of people and may commit horrific acts and all we have to do is let this guy come back and live in America with his wife and children. That's going to be awful tempering. That's going to be a awful tempting."

(See N.T. Sentencing Hearing, June 3, 2015, pp 11-12)

79. Mr. Saleem contends that another judge Robert J. Eby, grant plea agreement made by prosecution and Mr. Saleem. Judge Charles violate due process of the plea agreement. Judge Charles's claims that Mr. Saleem could go to American consulate office and

could have information of a terrorist was base upon lake of information about Mr. Saleem. Further, the comments reasonably lead a person to believe he had preconceived about Mr. Saleem and Pakistan. These comments revealed more of bias and prejudice about Mr. Saleem, when he was denied his due process right by objecting his deportation, which was the only reason to sign the plea agreement. Mr. Saleem has stated on the time of sentence that; **"The reason I plead guilty, Your Honor, is because they were going to try to deport me ..."** (See Exhibit "H")

80. Judge Charles went on to explain why he opposed to Mr. Saleem being deported without serving his sentence, even though judge Charles was aware of the plea agreement is already granted by another judge. Mr. Saleem's deportation has already begins, where his airline ticket has been purchased, U.S. Marshals has already assigned to escort Mr. Saleem back to Pakistan. Judge Charles has violate a plea agreement, which was already accepted. Because judge Charles was actually bias and did not care for fairness of the basic requirement of due process. Judge Charles didn't stop there, he further explain why he don't care for Mr. Saleem's plea agreement specially "Commonwealth's no objection to immediate deportation." and stated that;

"He's not going to be put in jail in Pakistan. I can't - I'm speculating when I say that he might be viewed as a hero there, but - and that is speculation. But I know that when he gets off that plane in Islamabad, the American Officials are going to send him out the gate, take his handcuffs off, and say, bye-bye. And he's free as a bird, In fact, that I know and that's not something I am comfortable with."

(N.T. sentencing hearing, June 3, 2015, p.16)

81. Again, this reveals more about Judge Charles's personal bias about Mr. Saleem, being Muslim and from Pakistan. It was definitely in the knowledge of judge Charles that plea agreement has been signed and further Mr. Saleem is going to be deported next week. Despite the facts of the plea agreement judge Charles believed to disregard no matter what plea agreement required and

what is responsibility on Commonwealth's side. Judge Charles could have simply object plea agreement and Mr. Saleem could have go to trial by jury. Judge Charles only pick one clause of the plea agreement and show his disagreement saying that " **that's not something I am comfortable with**".

82. An "objective, reasonable layperson" would question the propriety of judge Charles's comments and his partiality. In re Kinsington Intern Ltd., 368 F. 3d 289, 303 (3d Cir. 2004). The Judicial Cannon of Pennsylvania precludes judges from manifesting bias or prejudice, through words or conduct, based upon race, religion, or ethnicity. Whether or not this is evidence of actual basis, at the least, in this case justice does not satisfy the appearance of justice. See Offutt v. United States, supra.

Mr. Saleem contends that judge Charles has shown prejudice and bias not only in his words but also in his actions. When he did not abide by plea agreement. Judge Charles took **ONE** clause of the pleas agreement that was most important to Mr. Saleem and was actually **ONLY** reason to sign his plea agreement. In the absence of this clause "Commonwealth has no objection to your immediate deportation", the whole plea is empty. Judge Charles's actions were prejudice and impartial. If judge Charles did not have acted bias, Mr. Saleem would have been deported in 2015.

83. the Supreme Court has made clear that, when the presiding judge in not impartial, there is a "structural defect [] in the constitution. of the trial mechanism" that "def[ies] analysis by 'harmless error' standards." Arizina v. Fulminante, 499 U.S. 279, 309, 111 S.Ct. 1246 (1991).

But unfortunately, under the circumstance of this case, judge Charles's actions were a structural defect, when he acted bias and took his own route and did not abide by the plea agreement.

84. Circumstance briefly explained including Judge Charles's claims of that Mr. Saleem's knowledge of terrorist and he will be viewed as hero in Pakistan, making him to violate plea agreement

clause of "Commonwealth has no objection to your immediate deportation". Judge Charles's actions were bias and prejudice and were so unfair that miscarriage of justice occurred which no civilized society can tolerate.

In the plea agreement, Commonwealth agreed with "No objection to immediate deportation" yet was objected by judge Charles due to his bias actions. Fundamental defect at the the time of sentencing, when judge Charles acted bias and refuse to implement a clause of plea agreement causing a complete miscarriage of justice. If the judge Charles has not acted bias, Mr. Saleem would be deported, actions of judge Charles constitute miscarriage of justice.

85. Guaranteed "NO objection to immediate deportation" was Mr. Saleem's fundamental constitutional right, violation of these constitutional rights, and the courts did not consider the claims prejudice Mr. Saleem, since he would be in Pakistan from last six (6) years insted send him to jail. Fundamental miscarriage of justice would result from its dismissal.

The bias actions of judge Charles, undermines the conclusion that Mr. Saleem is going to be deported in June of 2105. There was judge Charles who's actions were bias, prejudice and partial. These inconsistent actions violate due process of law and constitute professional misconduct. These action are sufficient to violation of due process and negate the honesty.

Superior Court also disregards the actions of judge Charles which was based upon bias and prejudice, and further intentional involvement, enforcing a waiver would work extreme miscarriage of justice.

## 86. Extraordinary Circumstance and Compelling Reason

For Mr. Saleem, nothing could be more extraordinary and compelling than six (6) years delay in **"immediate deportation"**, especially after Mr. Saleem took plea when District Attorney's Office refuse to make copy of exculpatory video evidences. Then his immediate deportation was interfered by the Commonwealth by filing a false Writ. Top of that, Mr. Saleem's trial and the PCRA attorney's fail to protect Mr. Saleem's basic constitutional rights.

Mr. Saleem fileed many Motions, send requests to every one involved , wrote letters to Judges, Clerk of Court, District Attorney's Office, and both trial and PCRA attorneys and use any and all possible resources to get get the relief but no positive results. This very unique and rare situation lead to terminal suffering and substantially denials lead to this Motion 60 (B) filings. Mr. Saleem's nationality expose him and make him more vulnerable and expose to the distinct justice system.

87. Mr. Saleem's minimum was December 2, 2016. As of today Mr. Saleem has spent over 75 month, which is over three (3) times of his minimum. Mr. Saleem sign plea with the agreement of "Commonwealth has no objection to immediate deportation". Mr. Saleem is married with three (3) children, One of Mr. Saleem's 19 years old son (Yahya), has life long disability and suffering from sever autism. Yahya still non-verbal and under 24/7 personal care. Since Mr. Saleem was interfered from deportation Mr. Saleem's son having more and severe panic attacks and needing Mr. Saleem's help more than ever. On the time of signing plea agreement Mr. Saleem consider all the family needs and choose not to go to trial with the agreement that Commonwealth would not object if he would like to deported. Mr. Saleem's wife work six (6) days a week to support three school going children. This **"objection"** and then delay in Mr. Saleem's deportation has shaken Mr. Saleem's family way more than average family.

88. **Finally**, none of these reasons alone is extraordinary and compelling. Taken together, however, they constitute extraordinary and compelling reason to renew his habeas relief, beyond what is usual, customary, regular, or common, and reasons "so great that irreparable harm or injustice would result if [the relief] is not [granted]."

Mr. Saleem's lengthy incarceration instead Mr. Saleem be deported trigger further hardship. Intentional delay in deportation is sufficient and considerable applicable factor to be eligible for granting requested relief.

Mr. Saleem elect not to go to trial and choose the plea "Commonwealth has no objection to his immediate deportation", the point is that Commonwealth still disagreed with his deportation and Mr. Saleem remains in jail, without any justification.

## CONCLUSION

Mr. Saleem's plea agreement was include that "Commonwealth has no objection to immediate deportation". For this reason and other elaborated here, this Honorable Court should grant Mr. Saleem's Motion under Rule 60 (B), and request for relief, since extraordinary and compelling reasons have been established.


Submitted By,

Date: June 04, 2021

Mohammad Sohail Saleem, MA-9795
S.C.I., Camp Hill,  Box 200
Camp Hill, PA 17001

## CERTIFICATE OF SERVICE

I, Mohammad Sohail Saleem, Pro-Se, herby certify that copies of the attached Documents, have been served upon the person(s) listed below via USPS First Class Mail to :-

Office of the Clerk
U.S. District Courts
235 North Washington Ave.,
SCRANTON, PA 18501

District Attorney's Office
Lebanon County Courthouse
400 South 8th Street
Lebanon PA 17042

Submitted By,

Date:- June 04, 2021

Mohammad Sohail Saleem, MA-9795
S.C.I., Camp Hill, Box 200
Camp Hill, PA 17001

## VERIFICATION

I, Mohammad Sohail Saleem, Pro-Se, verify that the statements made in attached Documents, are correct and true, in my best knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa. C.S.A. § 4904, relating to unsworn falsification to authorities.

Submitted By,

Date:- June 04, 2021

Mohammad Sohail Saleem, MA-9795
S.C.I., Camp Hill, Box 200
Camp Hill, PA 17001

Mohammad Salaam, MA-9795
S.C.I., Camp Hill, Box-200
Camp Hill, PA 17001

RECEIVED
SCRANTON

JUN 0 9 2021

PER_____ DEPUTY CLERK

Office of
United State
235 North
P.O.
SCRANTON